COMMERCIAL PROGRAMMING UNLIMITED et al., Appellants, v COLUMBIA BROADCASTING SYSTEMS INC. et al., Respondents.

First Department, December 30, 1975

*David Edelman* of counsel *(Mark Fisherman* with him on the brief; *Edelman & Jennings,* attorneys), for appellants.

*Michael J. Calvey* of counsel *(Carleton G. Eldridge, Jr.,* and *Gordon T. King* with him on the brief; *Coudert Brothers,* attorneys), for respondents.

TILZER, J. This action sounding in libel and injurious falsehood emanates from statements made of and concerning plaintiffs Commercial Programming Unlimited and Walter Small, on news reports carried over WCBS TV, i.e., the 11:00 P.M. news report on December 25, 1973 and a "follow-up" story broadcast on the 6:00 P.M. and 11:00 P.M. news reports on April 22, 1974. The reports were part of a series dealing with "deceptive and otherwise undesirable practices being indulged in by various types of vocational schools" and the subject newscasts dealt with computer training schools. Defendant John Stoessel reported, wrote, compiled and acted as the primary investigator for the series.

Defendants Stoessel and WCBS moved for summary judgment, urging that the broadcasts were governed by the constitutionally based privilege which has evolved from *New York Times Co. v Sullivan* (376 US 254, 279–280) wherein it was held that a public official could not recover damages for a defamatory falsehood about his official conduct "unless he proves that the statement was made with 'actual malice'— that is, with knowledge that it was false or with reckless disregard of whether it was false or not." It was argued, alternatively, that the *New York Times* standard of actual malice was applicable herein, either because plaintiffs were public figures and hence within the case of *Curtis Pub. Co. v Butts* (388 US 130) (which extended the *New York Times* case to public figures), or because the statements involved matters of public concern or interest and hence were within the ambit of *Rosenbloom v Metromedia* (403 US 29) (which further extended the *New York Times* case to a private individual in connection with the individual's involvement in an event of public interest). Accordingly, defendants argued that since actual malice was not shown, the complaint should be dismissed.

Special Term rejected the contention that the actual malice standard must be applied herein because plaintiffs are public figures. On that issue we agree. As stated by Special Term (81 Misc 2d 678, 683): "Upon the papers submitted, the court is unable to conclude that, as a matter of law, plaintiffs are 'public figures.' They are not generally renowned, as was the plaintiff in *Butts,* nor did they 'thrust * * * [themselves] into the "vortex" of the controversy' as did the plaintiff in *Walker* (388 US 130, 146)." However, Special Term concluded that the statements were subject to the actual malice standard in accordance with the *Rosenbloom* case *(supra),* and finding that actual malice was not shown, granted summary judgment dismissing the complaint. In this respect Special Term rejected the contention that the subsequently decided case of *Gertz v Robert Welch, Inc.* (418 US 323), required a return to the "fair comment" rule which governed prior to the *New York Times* case *(supra).* In the *Gertz* case *(supra,* pp 345–346), the Supreme Court retreated from the broad holding of *Rosenbloom (supra),* and concluded that the "States should retain substantial latitude in their efforts to enforce a legal remedy for defamatory falsehood injurious to the reputation of a private individual." It was further stated (p 347): "We hold that, so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual."

However, as already noted, Special Term found that actual malice was still the standard to be applied to private individuals involved in matters of public interest, concluding that New York courts had applied the *New York Times* principle to matters of public concern even prior to the *Rosenbloom* decision. And, the Special Term, in a thorough and comprehensive opinion analyzed the development of the law in this area as well as the reasons and necessity for granting a qualified privilege to publishers of defamatory statements where the public has a legitimate interest.

The Court of Appeals, however, has recently considered the effect of the *Gertz* case *(supra),* and while not returning to the "fair-comment" rule, it concluded that the actual malice standard was only applied by the Court of Appeals to matters involving private individuals "[u]nder the compulsion of *Rosenbloom"* and accordingly, the Court of Appeals devised a new standard of conduct to be applied in these circumstances,

as follows: "where the content of the article is arguably within the sphere of legitimate public concern, which is reasonably related to matters warranting public exposition, the party defamed may recover; however, to warrant such recovery he must establish, by a preponderance of the evidence, that the publisher acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties. *(Chapadeau v Utica Observer-Dispatch,* 38 NY2d 196, 199.)

Under the new fault standard enunciated in *Chapadeau (supra),* we conclude that triable factual issues exist and accordingly, summary judgment should be denied. (We should note that even under the actual malice standard, the court would be of the opinion that summary judgment upon this record was premature and that the motion should have been denied with leave to renew upon completion of discovery proceedings.) Plaintiffs have come forth with sufficient to indicate that certain of the statements may have been erroneous and/or grossly misleading and should not at this time be precluded from seeking to recover damages for the injuries which they sustained. (We note that the *Gertz* case only permitted the States to devise a different fault standard than actual malice only insofar as damages are sought for actual injuries. Under the *Gertz* case (p 350) actual malice must still be shown in order to recover punitive damages (see Corporate Defamation and Product Disparagement: Narrowing the Analogy to Personal Defamation, 75 Col L Rev, p 963, 984). And, there are issues as to whether those statements were made as a result of the publisher's grossly irresponsible conduct. For example, the news reports referred to specific costs of the courses offered by Commercial Programming Unlimited and indicated that interest rates were charged in such amounts, which, if true, would be usurious. Yet, it appears that defendant Stoessel previously had in his possession a copy of the school catalogue and the information contained therein does not support the statements made by defendants. Nor has Stoessel come forth with facts establishing actual information which he possessed, other than that contained in the catalogue, i.e., with reference to costs and interest.

Additionally, defendants in commenting about booklets which plaintiff distributed, containing the stamp "Approved by the New York State Department of Education," stated as follows: "Unfortunately, the Department of Education has no

such stamp, and has not approved the book." However, there is no proof in the record that the book was not approved, and curiously, despite defendants' claims of reliance upon information received from governmental agencies in preparing the programs, it does not appear that the Department of Education, which is the supervisory agency for data-processing schools, was ever contacted. And in this respect we note that plaintiffs have submitted letters from the Department of Education which state that the "contents of the brochure" were approved; that the school was "operating within * * * regulations"; and that there were "no outstanding complaints against the school." Also to be noted, is the erroneous statement that the Federal Trade Commission filed a complaint against Commercial Programming, whereas, in fact, the commission had only proposed a complaint. And lastly, we note that there are some indications of possible distortion of an interview with the then Commissioner of Consumer Affairs, Betty Furness.

In contrast to the plaintiffs' showing, defendants' affidavits, which were offered to demonstrate the manner in which the news reports were compiled, were entirely inadequate to preclude plaintiffs as a matter of law. The only affiant with knowledge was defendant John Stoessel. To the extent that he set forth the results of his own investigation, much of his statements were conclusory and there was little attempt to supply documentation. No affidavits were obtained from the governmental agencies allegedly contacted and where documents were submitted, they were neither conclusive nor necessarily supportive of defendants' position. With regard to the information obtained from research assistants, there is insufficient to corroborate the information which they allegedly obtained and reported to Stoessel and indeed, no affidavits were submitted from those investigators. In all, we find factual issues requiring the denial of summary judgment.

Accordingly, the order entered April 21, 1975 granting the motion for summary judgment by defendants John Stoessel and Columbia Broadcasting Systems should be reversed on the law and the motion denied, with costs and disbursements to abide the event.

STEVENS, P. J., KUPFERMAN, MURPHY and LUPIANO, JJ., concur.

Order, Supreme Court, New York County, entered on April

21, 1975, unanimously reversed, on the law, and the motion denied, with $60 costs and disbursements to abide the event.