Harold Hyman, J.
"Overpayments”, made by the Department of Social Services to recipients in excess of the sum to which they may either be entitled or because of fraud or ineligibility, have long been receiving the general paying public’s notice to its annoyance and rage, as well as its complete lack of comprehension as to how or why it can occur or is even allowed to occur to such an extensive volume. To the public’s complete consternation it has continued to occur and grow like an insidious cancer gnawing at the very vitals of public support, and to the overwhelming expense of those who are compelled by law to contribute. The general public cannot believe what they have read and been told of how ineligible as well as fraudulent recipients have extracted and still continue to extract millions upon millions of their hard earned dollars, funds obtained from them through taxation, which should rightfully have gone to the true needy. That the public’s moneys are said to have been carelessly squandered away by the Department of Social Services through the medium of agency employees making payments of public funds to *508 persons not entitled thereto, either because of ineligibility or fraud or as to excessive amounts to which the recipient was not entitled, leaves the hard-working taxpaying citizen not only bewildered but completely distraught and thoroughly outraged.
The general public has a heart and conscience and no real deep-down antagonism to the truly needy recipients of public assistance, but it does have a furious rage against those who apply for and receive public assistance funds when not entitled thereto, that is, an amount in excess of what they may legitimately be entitled to, ineligible to receive any public assistance because of fraud, or sheer lack of care or inefficiency of said governmental agency (department).
It is in this light and atmosphere that the plaintiffs herein, either present recipients or former recipients, have moved for a determination that this suit be permitted to be maintained as a "class action” pursuant to CPLR article 9, and that as such "class action”, summary judgment be granted to plaintiffs, (a) declaring that the practice and policy of the Department of Social Services of the City of New York (department) of taking "confessions of judgment” from former and present recipients of public assistance who received "overpayments” of assistance be enjoined; (b) that the "confessions of judgment” previously obtained from such former and present recipients and filed in the courts of the State of New York be vacated, and (c) that the department make "restitution” to those members of the class from whom payments were received or exacted through court sanctioned enforcement of judgment procedures.
Before commencing this action the plaintiffs had commenced an action against these same defendants in the United States District Court for the Southern District of New York wherein the plaintiffs alleged, as they do here, in addition to what has been heretofore stated, that the policy of the defendants in demanding and obtaining "confessions of judgment” violated the privilege against self incrimination and their right to due process pursuant to the Fourth and Fifth Amendments to the United States Constitution. The parties therein stipulated that that court would abstain from any determination pending litigation of the present claims in the State court. This action thereafter followed.
The first branch of the plaintiffs’ motion is for an order pursuant to CPLR article 9 determining that this action can *509 proceed as a "class action” by "all former and current recipients of public assistance who have been asked to confess, have confessed or in the future will confess or will be asked by the defendants or their duly authorized agents to confess judgment in favor of the Commissioner of Social Services of the City of New York for amounts of public assistance allegedly 'overpaid* to said persons”; intending by such all present or former recipients regardless of whether such "overpayments’’ are alleged to have occurred as a result of error on the part of the agency (department) or misrepresentation or concealment by the recipient.
To support their present application, plaintiffs contend that in the action in the United States District Court, in answer to certain interrogatories requested, the department stated that in the years 1972 to the first half of 1975 (three and one-half years) they requested, through their concealed assets section, confessions of judgment from 26,219 persons. The number is astonishing per se, but the amount of money which must have been involved must have reached fantastic heights and is more astounding. The number of "confessions” requested is one of the bases for plaintiffs’ application for leave to proceed by "class action”.
Plaintiffs also claim that as a prerequisite to a "class action”, they have questions of law and fact which are common to the entire class and predominate over any questions affecting only individual members. In this regard plaintiffs maintain that nowhere in the Social Services Law are defendants granted any authority to take "confessions of judgment” from recipients regardless of which class such recipient may fit into; and, consequently, any "confessions of judgment” secured and entered by defendants have been obtained in excess of the department’s lawful authority. Plaintiffs further delineate their position. They state that defendants must have a valid cause of action to obtain confessions in lieu of suit against current or former recipients for the value of assistance provided to such recipients, but that as to such, they maintain, the cause is alleged by them on behalf of those members of the class "who do not possess property from which recovery can be made”, and that possession of property from which recovery can be made is a minimum basic condition precedent to suit, and pleading such is required.
Claiming that the question is solely one of law, that is, the lack of authority being common to all of the recipients, *510 plaintiffs contend that summary judgment should be granted to them allowing the class action, enjoining defendant now and in the future from demanding or receiving confessions of judgment, directing restitution and vacating the confessions of judgment already received.
Plaintiffs basically contend that the basis for their challenging the department’s policy, practice and procedure of obtaining confessions of judgment from those recipients who received such "overpayments” of assistance is that the department’s activities in so doing are illegal in that it exceeds its lawful authority; and that under the circumstances to even commence suit for such "overpayments” in the absence of proof that such recipients are "discovered to possess real or personal property from which restitution could be effected” is likewise without sanction or authority.
The principle of law is well settled that an administrative agency has the right to exercise only such powers as are conferred upon it by legislative fiat (Village of Boonville v Maltbie, 272 NY 40); except as to such powers as are necessarily implied as being essential to the exercise of another power expressly conferred and plainly free of doubt appearing to have been within the intent of the Legislature (People ex rel. City of Olean v Western N. Y. & Pa. Traction Co., 214 NY 526, 529).
Can it be said that the department’s effort to recoup funds fraudulently or improperly obtained from said department by "unjustly or fraudulently enriched recipients” is an act of assuming unauthorized power; power beyond legislative intended limits? This court is of the opinion that it does not.
Within the scope of the issue of "authorized or implied power”, the court will first examine the so-called "stipulation issue” which the plaintiffs proclaim the defendants have agreed upon, and this court finds neither right nor power existent or implied within the purview of the Social Services Law, which in any way or to any extent authorizes such department, created by legislative enactment, to relinquish or to stipulate away any of its rights or powers whether they be statutory or implied. To prosecute recipients, criminally or civilly, those who have obtained social service monetary assistance illegally because of ineligibility or fraud, or to make legal effort to seek reimbursement from those who have obtained so-labeled "overpayments” erroneously is within the power implied in any such governmental agency if not statuto *511 rily spelled out. This is especially so in a city where many worthy recipients are being forced to suffer because of the scheming, fraudulent and abominable activities of the undeserving. Not by hindsight is such so, but by legislative intent and foresight.
There are three different classes of recipients to be separately considered, namely;
The first class of recipients are those who, although actually entitled to public assistance, through honest error on the part of the recipient or the department, have received "overpayments”. This class are recipients who are still receiving assistance and they are simply handled by section 106-b of the Social Services Law.
Section 106-b of the Social Services Law ("Recoupment of overpayments,”) provides: "Any inconsistent provision of law notwithstanding, a social services official may, in accordance with the regulations of the department and to the extent permitted by federal law and regulations, reduce the amount of a public assistance grant issued to a person to meet current needs in order to recoup any overpayments of public assistance made to such persons. For purposes of this section, overpayment shall include payments made to an eligible person in excess of his needs * * * payments made to ineligible persons and payments made to persons pending a fair hearing decision.” (Emphasis supplied.)
The above section would allow a reduction in future payments to an "eligible” recipient for any "overpayments” of public assistance and to persons ultimately found to be eligible persons pending a fair hearing decision.
The second class of recipients are those who honestly sought and received public assistance but were ultimately found to be ineligible.
Peculiarly the foregoing section (Social Services Law, § 106-fa) also provides for recoupment "including” from "ineligible” persons; for if a person is found to be "ineligible” any payments made to and received by such person cannot be classified as a mere "overpayment” but rather, at best, as an erroneous payment made by the agency, thus unjustly enriching the recipient. Such "overpayments” made to ineligible persons certainly cannot be recouped by deductions from "future” payments, since upon determining ineligibility, all payments would or should cease. To provide for recoupment by reducing the amount of the public assistance grant for one *512 who is not even entitled to any such assistance obviously was never intended; it would be an apparent contradiction never intended by the Legislature.
On the other hand, by the Legislature’s merely including such items as "overpayments” within the method prescribed for recoupment, even erroneously, it cannot be held that the Legislature intended to exclude and thus did exclude any other legal method of recoupment or recovery; had it so intended, it would have and could have said so specifically.
The third class of recipient involved are those who sought and received public assistance through or by fraudulent methods or representations. Little need be said that such a recipient not only falls within the civil procedural recoupment or recovery rights and powers of the department as stated heretofore with regard to the "second class of recipients” but that the department has the right and power to press for criminal liability of the recipient. Certainly, that class of recipient cannot have public assistance reduced to pay off the fraud, for that type of recipient would, upon the department’s determining the fraud, have stopped receiving all public assistance. It therefore follows that the Legislature did not, nor could it, intend that a thief be allowed to keep the spoils of his larceny with impunity from repayment. The very thought of such alleged intent, that is, to unjustly enrich a thief, is abhorrent to the very basis not only of common law and present statutory law, but also of good morals. It would be, in effect, if plaintiffs’ position be held to be so, an unconstitutional and immoral attempt to condone crime.
Nor was there any inclusion of "overpayments” by the Legislature in section 104 of the Social Services Law so as to make it a requisite that the person involved, from whom an "overpayment” is sought, be "discovered to have real or personal property”; the section imposes no such condition on "overpayments”. On the other hand, by the Legislature’s very exclusion of "overpayments” therein, it is deemed that "over-payments” impliedly may be collected by whatever legal means are available; that is, if obtained fraudulently, then through the use of either civil or criminal process, or even both, and if obtained by innocent mistake, oversight or other legitimate reason, then by whatever civil means might be available to any civil creditor as against any civil debtor, so long as the recipient is not then presently a recipient subject *513 to section 106-b of the Social Services Law as to reduction in payment to effectuate recoupment.
While it is true that the courts cannot supply matters omitted from a statute (McCluskey v Cromwell, 11 NY 593), necessary implications and intendments from the language employed in a statute may be resorted to in order to give effect to the over-all legislative intent (Singer v Singer, 177 Misc 76); so that whatever is necessarily implied in a statute is as much a part thereof as if written therein (People v Meakim, 133 NY 214).
Section 104 of the Social Services Law was never intended to cover all circumstances or cases resulting from "overpayments”, nor was it ever intended to circumscribe or limit the recoupment-collectibility of "overpayments” solely to the methods prescribed by sections 104 and 106-b of the Social Services Law. To the contrary, this court believes that the Legislature saw far beyond situations of mere innocent "over-payments” and into the field of false statements, misrepresentations, deliberate concealment, impersonation or other fraudulent devices of obtaining, attempting to obtain, or assisting another to obtain public assistance, by prescribing penalties both civil and criminal in nature (Social Services Law, §§ 145, 145-b, subd 2).
Subdivision 1 of section 145 of the Social Services Law provides that: "Any person who by means of a false statement or representation, or by deliberate concealment of any material fact, or by impersonation or other fraudulent device, obtains or attempts to obtain, or aids or abets any person to obtain public assistance * * * to which he is not entitled * * * shall be guilty of a misdemeanor * * * Failure on the part of a person receiving public assistance or care to notify the social services official granting such assistance or care of the receipt of money or property or income from employment or any other source whatsoever, shall, upon the cashing of a public assistance check * * * after the receipt of such money, or property, or income, constitute presumptive evidence of deliberate concealment of a material fact.”
The forerunner of the above section (Public Welfare Law, §§ 124-o, 187, subd [1]; § 148) even permitted attachment of moneys on deposit in a bank account in order to recover moneys advanced for "relief’ and considered same unaffected by criminal proceedings also brought (People v Currao, 166 Misc 374, 375).
*514 A statute imposing a penalty for the doing of an act not only prohibits the doing of the act involved, even if there not be contained express words of prohibition (Martin v Goldstein, 20 App Div 203); but, where a new right is created by statute and no remedy is prescribed therein for an aggrieved party for the violation of such right, the court will presume that it was the intention of the Legislature to give to the aggrieved party a common-law remedy for the violation of such statutory right, for the omission of a remedy is one which may be supplied by the courts in order to make such provision truly effectual. (City of New York v Sands, 105 NY 210, 218.)
Plaintiffs would place upon sections 104, 104-b and 106-b of the Social Services Law strict limitation, unbending restrictive construction, permitting of no implied authority. But the law regarding statutory construction makes no such demand of the court. To the contrary it permits freedom of movement, so that strict or literal interpretation of the statute is to be adhered to only if it is the spirit and purpose of a statute which the court must regard, and if this is not found by clear expression in the statute, then a reasonable construction should be adopted so as to carry out the intent of the Legislature (People ex rel. Onondaga County Sav. Bank v Butler, 147 NY 164; People ex rel. Collins v Spicer, 99 NY 225); this is particularly so where the Legislature has not specifically prohibited the act or indicated any prohibition of the act, nor has it specified by clear and unambiguous language its complete and positive intent to exclude the act of obtaining confessions of judgment from those recipients who have accepted and received "overpayments”, for to do so it would be sacrificing or prejudicing the greater good and public interests and welfare, and since such is not favored (Watertown Improvement and Constr. Co. v City of Watertown, 145 Misc 398), it should be avoided if possible (Wilson v Board of Educ., 39 AD2d 965).
On the other hand, since the language is not lacking in doubt as to intent to disallow the department to require and accept confessions of judgment, thus enabling the department to reasonably pursue its rights to recoupment of moneys which recipients of "overpayments” obtained from said department (and were thus unjustly enriched, whether innocently or fraudulently), and where such language reasonably indicates its intent to provide for recoupment by said department, the court is not to be deemed fettered to a mere verbal or literal *515 restricted interpretation of the statute upon which the question at issue depends.
This court has looked for and believes it has found that legislative intent which disallows the severe and rigid interpretation sought by plaintiffs (Burch v Newbury, 10 NY 374; Oswego Starch Factory v Dolloway, 21 NY 449) from the necessity or the cause for the enactment of the statute (Matter of Niagara, Lockport & Ontario Power Co., 111 App Div 686; People ex rel. Wood v Lacombe, 99 NY 43), namely, not to deprive those who are entitled to public assistance but to provide for the recovery of "overpayments” made for whatever cause so as to prevent fraud by or unjust enrichment of others, such being the laudable policy of the Legislature, particularly for the benefit of those persons who are in actual true need of aid; to the end that, in the interest of justice, the "overpayments” when recouped may then be applied to the common good of all true needy, and not to lead to unreasonable, unjust or absurd consequences. The Legislature must be presumed to have intended reasonable consequences from its enactment (East v Brooklyn Hts. R.R. Co., 195 NY 409).
Contrary to plaintiffs’ contention, the acts of defendant in obtaining confessions of judgment for "overpayments” cannot be construed as being in derogation of common law. We are not here dealing with the "common law” so-called "charity recipient” who was not then and would not now be compelled to repay, lacking any fraud or hidden assets. We are here dealing with the person who has been "overpaid” — one who by fraud or ineligibility, as to the latter whether known or unknown to the recipient, has received that to which he was not entitled in the first place or more than he was entitled to. It pertains to one who has been unjustly enriched at the expense of those persons actually in need and entitled thereto. Such person is not being asked to return that to which he was entitled but only that to which he was not entitled. This court therefore holds that the past or future acts of the defendants in accepting, receiving or even in demanding "confessions of judgment” for "overpayments” is not in derogation of the common law, does not create a right nonexistent prior to the enactment of the present law, the Social Services Law or its predecessors, and does not mandate the strict construction sought by the plaintiffs.
Therefore, since "overpayments” can have an innocent as well as fraudulent base, each matter must be considered *516 separately. If it be an innocent "overpayment”, lacking in fraud or fraudulent device, but the recipient still be eligible and receiving public assistance, then there exists the statutory procedural right to recoupment and recovery by the agency from the recipient pursuant to section 106-b of the Social Services Law; but, other than the foregoing, and in order to save legal expense, time and effort, the department has the inherent right and implied power to demand and receive a "confession of judgment” or thereafter seek recovery by whatever civil means is available. If the "overpayments” are based upon false or fraudulent statements with regard to eligibility, or as to mere erroneous eligibility, then not only is a civil right of action inherently and impliedly amenable to the department to recover to the extent of the amount obtained through the former means in a court of competent civil jurisdiction (Social Services Law, § 102, subd 2), but also a criminal action may be commenced against the wrongdoer who caused the "overpayment” (Social Services Law, § 145, subd 1), and as to the latter (erroneous eligibility) solely by means of civil liability.
Under the circumstances the court finds that with regard to the "stipulation” proposed by plaintiffs’ counsel for the department to enter into, such would definitively be beyond its authority, in that it would definitively and impliedly constitute an unlawful relinquishment by the department of rights and powers provided by statute and implied from the enactment of the Legislature.
The plaintiffs having moved for summary judgment pursuant to CPLR 3212 to enjoin the defendant, Department of Social Services of the City of New York, from taking "confessions of judgment” from present or future recipients of public assistance who have received "overpayments” of said assistance, to vacate all such "confessions of judgment” previously filed in the courts of the State of New York, to direct defendants to make restitution to recipients from whom payments were exacted through means of court-sanctioned "enforcement of judgment proceedings” thereby asserting that there are "no triable issues of fact, but only one of law” because, as they contend, defendant department only contends that the "challenged policies and practices * * * are reasonable and proper and in accordance with all applicable provisions of law”, this court finds that as to the cause of action which seeks the injunction based solely upon an interpretation of law, no *517 triable issue of fact exists, that it is solely a question of law, and that as to such cause of action, plaintiffs’ motion for summary judgment is denied.
Primarily; the court does not recognize the propriety of plaintiffs’ application for leave to maintain this action as a "class action” or even a divided class action under the present circumstances. The moving papers at first blush might seem to indicate that the prerequisites as required by CPLR 901 exist; but, on the other hand, a more thorough scrutiny into the matter can lead to one conclusion; namely, that there cannot be deemed a true single "class”, nor even truly delineated subclasses, for each of the 26,219 cases must stand upon its own factual base, must be individually examined, critically and thoroughly investigated, and lawfully determined.
Without further evidentiary proof being presented, it cannot at this time be said that common questions of law and fact exist in even a majority of the cases, even though a "confession of judgment” may have been obtained at some time in the past or may be obtained in the future. There has been no proof adduced in the moving papers which shows that an identical factual situation exists in any one specific group so as to allow for reaching a "class” determination which would cover all; nor can it be said that it is appropriate that an action should be permitted as to particular issues as a "partial class action” or that there be a subdivision into subclasses with each subclass treated as a separate class (CPLR 906), except on the issue of "authority”, and this "authority” has been determined to exist in the department.
It is simple to note that the "overpayment” in some cases may have been erroneously issued by the department but nevertheless not received or used by the so-called recipient. In other instances, it may have been "out-and-out” fraud by the recipient as to such funds obtained, the so-called "overpayments”. In still a third instance, it may have been paid to an ineligible person in honest error. In one instance it may give rise to the right to recoupment of "overpayments” pursuant to section 106-b of the Social Services Law, or in other instances by means of the implied power and right of recovery under the enacting statutes through civil or, if fraudulently obtained, by criminal process.
Plaintiffs’ motion to consider this action a "class action” within the purview of CPLR 902 so as to include the rights of persons other than the present plaintiffs, therefore, is denied; *518 there are no questions of law and fact shown to be common to a "class” which predominate over any question affecting individual members, nor are the claims or defenses typical to or of a specific class, nor is a class action superior to other available methods for the fair and efficient adjudication of the controversy (CPLR 901).
Partial summary judgment is granted to defendants dismissing the complaint, there being no questions or issues of fact but only of law, as to those parts of the complaint which (a) seek an injunction against past, present or future obtainment from "recipients” of confessions of judgment by defendants, (b) seek the right to deem this a "class action”, (c) seek to vacate all of the confessions of judgment obtained by defendants (regardless of when obtained) and (d) seeks restitution for the entire proposed class, or part or parts of said class, for moneys collected or received by way of recoupment or through other civil or criminal process.
AS TO THE INDIVIDUAL ACTIONS OF PLAINTIFFS I. MILAGROS PEREZ
Her complaint regarding the "confession of judgment” allegedly executed by her on October 25, 1973 to the department does not contain any allegation of any damage sustained by her either from the "confession of judgment” having been filed and/or docketed, if it ever was, or from payments, if any, thereon having been made by her to the defendant, or from any loss of her credit standing, if any ever did exist prior thereto. Her complaint is dismissed for insufficiency, with costs to defendants.
II. JO ANN ISERAL
Her complaint is that on November 7, 1973, while she was receiving public assistance, she was asked to confess judgment for "overpayments” resulting from, as she says, the department’s administrative error, which the department stated to her to be otherwise, upon duress in that the department stated that it intended to refer the matter to the District Attorney. She contends that she did not know, nor was it explained to her, what the consequences of her signing the "confession of judgment” would be insofar as its prejudicing her rights in a future criminal proceeding; also, that it was a confession of judgment obtained from her by [her] mistake.
*519 Here again, there is no allegation of monetary damage or imminent danger to plaintiff as to her credit, since there is no allegation that the confession was ever filed or docketed or that any payments were made by plaintiff thereon to defendant. Likewise, there is no allegation that defendants have pursued or initiated any criminal proceedings against her or that any are now pending or imminent. In regard to the latter, it is to be particularly observed that the criminal penalty provided by section 145 of the Social Services Law is a "misdemeanor” for which prosecution would have had to have been commenced within two years after the commission of the said offense (CPL 30.10, subd 2). The complaint of this plaintiff is also dismissed for lack of sufficiency, with costs.
III. KAREN SPAIN
This plaintiff contends that: on February 28, 1973 she voluntarily appeared at the Inspector General’s office, at which time she was asked to confess judgment regarding "overpayments” of public assistance. Plaintiff denied any wrongdoing claiming "departmental error”. A notice to reduce public assistance until the "overpayment” was recouped resulted in a "fair hearing” having been held on December 25, 1973, at which the defendant conceded that fraud was not involved; the Commissioner of the New York City Department of Social Services determined that "recoupment” (deduction from public assistance then being paid to her) was improper in such case. Plaintiff, since May 5, 1975, has not received public assistance because she is gainfully employed.
Here, as in the cases of the two prior-named plaintiffs, there is no allegation or proof that the confession was filed, docketed or used for any purpose, nor that any moneys were paid thereon by plaintiff to defendants, nor that the credit of plaintiff was in any way damaged. Here again, the complaint is devoid of essential factual allegations necessary to make it viable. The complaint is dismissed for lack of sufficiency, with costs.
IV. FANNY MACCHI
On November 5, 1973 plaintiff executed a "confession of judgment” in the amount of $15,347.35 premised upon alleged concealment of her husband’s employment and the receipt of disability payments while receiving public assistance. Plaintiff *520 denied any such concealment but nevertheless confessed judgment under alleged threat of criminal prosecution. Since then, plaintiff has voluntarily been making restitution at the rate of $20 per month.
On July 30, 1974 plaintiff was arrested and charged with grand larceny and violation of section 145 of the Social Services Law. On September 11, 1974 plaintiff pleaded guilty to the lesser included offense of petit larceny. Her subsequent motion to withdraw her plea of guilty was granted on February 28, 1975. Subsequently, in May 1975, upon consent of the District Attorney, an order of "adjournment in contemplation of dismissal” was entered by the court pursuant to CPL 170.55. The foregoing order of adjournment in contemplation of dismissal, she contends, is sufficient to warrant restitution of payments made by her and to a vacating of the confession of judgment.
The mere fact that the prosecution agrees to an "adjournment in contemplation of dismissal” does not mean the accused was actually free of guilt. There are many reasons or considerations which enter into such determination, which may have absolutely nothing to do with the guilt or innocence of the accused; such as: the accused’s family size, the ages of the children, the physical needs of the family of the accused, the accused’s health, the fact that the department had been receiving restitution payments from the accused and that the accused agrees to continue such payments, and other exigent circumstances. An "adjournment in contemplation of dismissal” is not and was never intended to have the same legal effect as a "trial order of dismissal”, the former not being on the merits (People v Campo, 71 Misc 2d 6), whereas the latter is on the merits. Certainly, the Legislature never contemplated such a dismissal to be considered or used as a basis for recovery of moneys received by the recipient through fraudulent means.
The plaintiffs’ complaint is dismissed for lack of legal sufficiency, with costs to defendants.