**3**  SOL GOLDMAN et al., as Administrators of the Estate of ALEX DI LORENZO, Deceased, Respondents, v NEW YORK POST CORPORATION et al., Appellants.—Order, Supreme Court, New York County, entered October 15, 1976, denying defendants-appellants' motion for summary judgment dismissing the complaint, unanimously affirmed, with $60 costs and disbursements of this appeal payable to respondents. Plaintiffs-respondents (though one has died and the administrators have been substituted, they will be so referred to), substantial real estate operators, were the subjects of a series of articles on "massage parlors" in the newspaper published, managed, edited, and contributed to by various of the defendants in one or more of these capacities. Perhaps nothing portrays the style and flavor of these articles better than to cite the reference to plaintiffs therein as "sexlords." The suit is, of course, for libel. Defendants claim (preargument statement): "that, under the recent decision of the New York Court of Appeals in *Chapadeau v. Utica Observer-Dispatch, Inc.,* 38 N. Y. 2d 196 (1975), the plaintiffs as a matter of law could not bear their burden of establishing 'that the publisher acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties.' *Chapadeau, supra.,* 38 N. Y. 2d at 199". *Chapadeau* sets

forth a concise statement of how First Amendment protection came to be applied to defamatory statements, and the developments subsequent to *New York Times Co. v Sullivan* (376 US 254), down to *Chapadeau* itself, culminating in its holding "that within the limits imposed by the Supreme Court where the content of the article is arguably within the sphere of legitimate public concern, which is reasonably related to matters warranting public exposition, the party defamed may recover; however, to warrant such recovery he must establish, by a preponderance of the evidence, that the publisher acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." *(Chapadeau, supra,* p 199). It is not possible to evaluate the subject articles against the standard so enunciated without trial. While conditions in respect of the practice of prostitution are certainly "within the sphere of legitimate public concern," that factor alone is not dispositive of other issues inherent in this case. Indeed, this is the only pertinent fact as to which there is no issue. Were departures from strict accuracy (cf. *Chapadeau* p 200) an indication of irresponsibility? Was an attempt by defendant Post's reporters to interview plaintiffs made in good faith as a responsible attempt to check the facts, or to embarrass them? Are those quotations in the articles, which are set forth without attribution, truly quotations? In the totality of the circumstances, may actual malice be inferred? What are the standards of information gathering against which defendants' procedures should be measured? Are the plaintiffs public figures? These unanswered questions and the many others which suggest themselves on a fair perusal of the articles under review, preclude a grant of summary judgment either way. (See *Commercial Programming Unlimited v Columbia Broadcasting Systems,* 50 AD2d 351.) Concur—Lupiano, J. P., Birns, Capozzoli and Markewich, JJ.