HENRY H. GROBE, Appellant, v THREE VILLAGE HERALD et al.,
Respondents.

Second Department, August 6, 1979

## APPEARANCES OF COUNSEL

*Naidich & Smolev, P. C. (Stanley Pierce* of counsel), for
appellant.

*Lankenau Kovner & Bickford (Victor A. Kovner* and *Harriette K. Dorsen* of counsel), for respondents.

**OPINION OF THE COURT**

*Per Curiam.*

Plaintiff seeks to recover damages for libel. He appeals from an order which granted defendants' motion for summary judgment. The order should be affirmed.

Following a collision between plaintiff and a 13-year-old boy, while the boy was riding a bicycle in the shopping mall of which plaintiff was a major shareholder, plaintiff allegedly struck the child "about the face and his side with his hands". The boy was the son of a New York City policeman, Officer Scibelli. After the latter caused plaintiff's arrest on a charge of harassment (see Penal Law, § 240.25), plaintiff threatened to sue him for one million dollars damages. Plaintiff was subsequently granted an adjournment in contemplation of dismissal (ACOD) (see CPL 170.55). Defendant The Three Village Herald published an article reporting the ACOD as a "guilty plea". This libel action ensued.

We are in accord with Special Term's conclusion that plaintiff is a private individual (see *Gertz v Robert Welch, Inc.,* 418 US 323; *Hutchinson v Proxmire,* 443 US — [decided June 26, 1979]; *Wolston v Reader's Digest Assn.,* 443 US — [decided June 26, 1979]). However, under the facts at bar, plaintiff's conduct and the operation of the criminal justice system with respect to disposition of the charges against plaintiff being a matter of public concern, plaintiff was under an obligation to adduce evidence of "gross irresponsibility" by defendants; that plaintiff failed to do and summary judgment was properly granted, as in *Chapadeau v Utica Observer-Dispatch* (38 NY2d 196). At bar the defendant reporter deposed that he verified his information, *inter alia,* by conversing with Police Officer Scibelli, father of the boy, and by calling the court. He also telephoned plaintiff but plaintiff did not return the call.

We note further that the record contains the uncontroverted averment of Officer Scibelli that: "In this conversation, I told O'Rourke that Mr. Grobe had pleaded guilty. In the language of the police department, an application for an ACOD is similar to 'copping a plea'. To me and the other officers I work with, although there is a technical distinction between an ACOD and a plea of guilty, the two are frequently used interchangeably in conversation." An ACOD is clearly

not a guilty plea (see CPL 170.55, subd 1, which states that an ACOD may be granted "before entry of a plea of guilty"; see, also, CPL 160.50, subds 1, 2, which include an ACOD dismissal as an order made "[u]pon the termination of a criminal action or proceeding against a person in favor of such person", entitling him to return of fingerprints, photographs, etc.).

The police view, as expressed by Officer Scibelli, however, is not without partial judicial support (see *People v Siragusa,* 81 Misc 2d 368, 370 ["an A.C.O.D. as practiced in our courts is merely another category in what is commonly referred to as 'plea bargaining' "]; *Perez v Dumpson,* 88 Misc 2d 506, mod on other grounds 58 AD2d 887; *Kenul v Hollander,* 86 Misc 2d 466; *Cardi v Supermarket Gen. Corp.,* 453 F Supp 633). Thus, from the viewpoint of assessing not whether the article was accurate but whether, in committing the error, defendants acted with gross irresponsibility, plaintiff's case is found wanting.

GULOTTA, J. (dissenting). I dissent and vote to reverse the order and deny defendants' motion.

Contrary to the views expressed by my brethren in the majority, it is my belief that there exists in this case a triable issue of fact as to whether the defendants acted in a "grossly irresponsible manner" (see *Chapadeau v Utica Observer-Dispatch,* 38 NY2d 196, 199) in researching, preparing and publishing the allegedly libelous article, and that therefore the motion for summary judgment should have been denied. Accordingly, I would reverse and remit the case for a plenary trial.

In order for a plaintiff to recover in an action for libel under the standard set forth in *Chapadeau (supra),* it is necessary that he establish by a preponderance of the evidence (1) the falsity of the alleged libel (see *Rinaldi v Holt, Rinehart & Winston,* 42 NY2d 369, 380) and (2) that the defendant in publishing the libel acted in a grossly irresponsible manner "without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties" *(Chapadeau v Utica Observer-Dispatch, supra,* p 199). Where, as in the case at bar, the falsity of the writing has been conclusively established,[1] the substantive issue con-

---

1. It is clear beyond peradventure of doubt that the plaintiff did not "plead guilty" to the harassment charge but was granted an adjournment in contemplation of dimissal (ACOD).

fronting the court is whether there exists a triable issue of fact regarding the standard of care employed by the defendants in preparing the libelous article, and it is on this precise point that I differ from my colleagues in the majority.

In my opinion, the mere fact that the defendant reporter may have called the complainant (the infant's father) and the First District Court in order to "verify" his information regarding the purported plea (as he has alleged) and that he may also have attempted to call the plaintiff in an effort to secure his reaction to the disposition of the charges, cannot be said to satisfy the *Chapadeau standard as a matter of law, so* long as it further appears (1) that the reporter involved was a young man who, at the time, had little or no formal training or on-the-job experience as a police reporter; (2) that a personal inspection of the court docket would have revealed the true facts (i.e., that the plaintiff had received an ACOD, which is markedly different from a legal point of view than a plea of guilty [see CPL 170.55]); and (3) that upon being informed by an unnamed court clerk (or so it is alleged) that the plaintiff "had pleaded guilty and received [an] ACOD and was placed on six months probation", the reporter, who had no legal training or courtroom experience, failed to pursue the meaning of the term "ACOD" with anyone who might have knowledge of its legal significance, e.g., the court clerk, the District Attorney's office, plaintiff's attorney in the District Court proceedings or the newspaper's own counsel. Under these circumstances, it is my belief that assuming, *arguendo,* the truth of these averments, it is for the trier of the facts to determine whether the steps taken to verify the story regarding plaintiff's purported plea satisfied the applicable standard of journalistic care, or whether the failure to inquire further constituted actionable "gross negligence" (see *Chapadeau v Utica Observer-Dispatch,* 38 NY2d 196, *supra).* In this connection, the observation of Mr. Justice Titone in *Greenberg v CBS, Inc.* (69 AD2d 693 [decided herewith]) is, I believe, pertinent (pp 709-710):

"One final contention of the defendants should also be discussed, namely the assertion that their motion [for summary judgment] should not be defeated in the absence of evidence showing that the 'defendants failed to act in accordance with the standards for prepublication editorial procedures commonly followed by responsible journalists.' Succinctly stated, the defendants would require affidavits from

competent, independent expert journalists before making a determination that the plaintiff had carried his burden.

"In *Chapadeau v Utica Observer-Dispatch* (38 NY2d 196, *supra)*, the Court of Appeals fashioned a gross negligence standard to balance the need for free debate against the right of the individual to be secure in his reputation. Like the concept of malice, the *Chapadeau* standard is a legal measure, *designed to be applied in a wide range of circumstances and evaluated by the reasonable individual.* These standards are not professional journalistic principles." (Emphasis supplied.)

In short, it is my belief that it has not been established as a matter of law that the preparation of the article in suit comported with the standard of care enunciated by the Court of Appeals in the *Chapadeau* case *(supra)* and that a trial will be necessary in order to determine that issue (see *Goldman v New York Post Corp.,* 58 AD2d 769; *Bolam v McGraw-Hill,* 52 AD2d 762; see, also, *Commercial Programming Unlimited v Columbia Broadcasting Systems,* 50 AD2d 351). In addition, I find the defendants' argument urging, in effect, a "higher" threshold of "gross irresponsibility" among "smaller" newspapers to be unpersuasive, for while the disadvantages attendant lesser resources are undoubtedly real, still "smallness" per se cannot be permitted to operate as a sword, i.e., a license to libel. The important rights protected by the First Amendment carry with them certain obligations to the general public and may not be so easily avoided.

As a second and independent ground for denying summary judgment, it is my further belief that the defendants' showing in support of the motion is legally insufficient, as "[t]he burden is upon the movant to produce evidence whereby it must clearly appear that no material and triable issue of fact is presented by the pleadings, even where the opposing papers may be insufficient to defeat the motion *(Stelick v Gangl,* 47 AD2d 789; *Greenberg v Manlon Realty,* 43 AD2d 968) * * * [A motion for] summary judgment should [therefore] be denied where * * * there is *any* doubt whether there is a material triable issue of fact *(Phillips v Kantor & Co.,* 31 NY2d 307, 311; 4 Weinstein-Korn-Miller, NY Civ Prac, par 3212.05c)" *(Walski v Forma,* 54 AD2d 776; emphasis supplied). In the instant case, the complaint alleges, in substance, a failure to exercise due care and, to my mind, the strongest evidence which tends to negative that allegation is the statement in the affidavit of the defendant reporter that he verified the "fact"

of the purported plea with an unidentified female "clerk" at the District Court. Thus viewed, the "evidence" which must be relied upon to grant summary judgment is the bald allegation of the single defendant who may be the most at fault in preparing the erroneous news item and in whose mind (owing to his failure to inquire as to the clerk's name) lies the exclusive means of rebutting that allegation.

On this state of the facts, it is my view that to conclude, as the majority has done, that the plaintiff is bound by the reporter's answer is totally unwarranted, as it will operate to deprive this plaintiff of his day in court and his opportunity to confront the affiant in the jury's presence and to permit that body to assay his credibility as tested in the crucible of an adversary proceeding. To deny the plaintiff this fundamental right cannot be defended in the name of judicial economy, nor in the interest of preserving First Amendment freedoms. Without intending to cast any aspersions upon the present affiant, the obvious effect of such a rule would be to increase the motive to falsify or misrepresent, especially in those cases in which contradiction will prove difficult if not impossible.[2] As the Court of Appeals stated in *Capeline Assoc. v Globe Mfg. Corp.* (34 NY2d 338, 341): "On a motion for summary judgment the court is not to determine credibility, but whether there exists a factual issue, *or if arguably there is a genuine issue of fact (Terranova v. Emil,* 20 N Y 2d 493; *Falk v. Goodman,* 7 N Y 2d 87, 91; *Sillman v. Twentieth Century-Fox Film Corp.,* 3 N Y 2d 395, 404). 'This is so because the granting of such a motion is the procedural equivalent of a trial' *(Falk v. Goodman, supra,* p. 91)." (Emphasis supplied.)

Where, as in the instant case, the granting of summary judgment would have to rest entirely upon the sworn but otherwise unsupported allegations of an interested party, and where the facts necessary to defeat the application lie exclusively within that party's knowledge,[3] it is my belief that the

---

2. Can it reasonably be argued, for example, that the plaintiff in opposition to the motion for summary judgment, should have submitted affidavits from every female employee of the First District Court who might conceivably have answered the telephone on that afternoon, denying receipt of the reporter's telephone call in order to raise a triable issue of fact?

3. Although noting that the reporter has already been deposed in this case, I hasten to add that his pretrial testimony merely echoed his affidavit in the important matter of his having failed to secure the name of the clerk with whom he had spoken. For all practical purposes, then, the plaintiff is in no better position to verify his story now than before. However, the failure to secure the clerk's name is itself some evidence of

moving papers should be deemed insufficient, the application denied, and the case remitted for trial (see *Commercial Programming Unlimited v Columbia Broadcasting Systems,* 50 AD2d 351, *supra; cf. Capelin Assoc. v Globe Mfg. Corp., supra; Greenberg v Manlon Realty,* 43 AD2d 968, *supra).* Viewed from a somewhat different perspective, where the facts alleged in support of the motion for summary judgment lie peculiarly within the knowledge of the moving party, and where those facts are, by their very nature, unusual (e.g., that a clerk of the District Court, after consulting the court docket, conveyed information which was at variance with the true facts), it is sufficient to raise a triable issue for the opposing party to call attention to that fact. "[The] drastic remedy [of summary judgment] should not be granted where there is any doubt as to the existence of such issues * * * '[I]ssue-finding, rather than issue-determination, is the key to the procedure' [citations omitted]" *(Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395, 404).

HOPKINS, J. P., SUOZZI and COHALAN, JJ., concur in *Per Curiam* opinion; GULOTTA, J., dissents and votes to reverse the order and deny the motion, with an opinion.

Order of the Supreme Court, Suffolk County, entered January 4, 1979, affirmed, with $50 costs and disbursements.

reportorial negligence, and, in my opinion, should not be permitted to enable the defendants to "bootstrap" themselves into success on the merits without first proceeding to trial.