Rainbow v WPIX, Inc. (2020 NY Slip Op 00499)





Rainbow v WPIX, Inc.


2020 NY Slip Op 00499


Decided on January 23, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 23, 2020

Gische, J.P., Mazzarelli, Webber, Gesmer, JJ.


10855 152477/15

[*1] Starlight Rainbow, Plaintiff-Appellant,
v
WPIX, Inc., Defendant-Respondent, Jeremy Tanner, et al., Defendants. The Reporters Committee for Freedom of the Press; Advance Publications, Inc.; The Associated Press; Courthouse News Service; Daily News, LP; First Look Media Works, Inc.; Gannett Co., Inc.; International Documentary Assn.; Investigative Reporting Workshop at American University; The Media Institute; MPA - The Association of Magazine Media; National Press Photographers Association; National Public Radio., Inc.; The New York Times Company; Newsday LLC; Online News Association; POLITICO LLC; Radio Television Digital News Association; Reveal From the Center for Investigative Reporting; Society of Professional Journalists and Tully Center for Free Speech, Amici Curiae.


Lewis Clifton & Nikolaidis, P.C., New York (Daniel E. Clifton of counsel), for appellant.
McCusker, Anselmi, Rosen & Carvelli, P.C., New York (Bruce S. Rosen of counsel), for respondent.
Holland & Knight LLP, New York (Christine Walz of counsel), for amici curiae.



Order, Supreme Court, New York County (Robert D. Kalish, J.), entered October 22, 2018, which, to the extent appealed from, granted defendant WPIX's motion for summary judgment dismissing the complaint, unanimously affirmed, without costs.
Plaintiff, a teacher with the unusual and distinctive name, Starlight Rainbow, alleges that WPIX published an online article mistakenly naming her as the public school teacher who was bullying a PS 235 fifth grader. The teacher who was the subject of the accusations had the same last name as plaintiff. The parties do not dispute that the article was defamatory per se, in that it injured her in her profession as a teacher.
The parties also agree that the article concerned a matter of public concern, and that plaintiff is not a public figure. Thus, to prevail on a defamation claim, plaintiff must show, by a preponderance of the evidence, that WPIX was "grossly irresponsible" in publishing the article on its website, in that it acted "without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties" (Chapadeau v Utica Observer-Dispatch, 38 NY2d 196, 199 [1975]). The gross irresponsibility standard of Chapadeau is more lenient than the actual malice standard applicable to public figures (Rivera v Time Warner Inc., 56 AD3d 298 [1st Dept 2008]; see also Karaduman v Newsday, Inc., 51 NY2d 531, 539 [1980]; Trump Vil. Section 4, Inc. v Bezvoleva, 2015 WL 9916879 [Sup Ct, NY [*2]County 2015], at *7, affd as modified 161 AD3d 916 [2d Dept 2018]). The motion court properly held plaintiff cannot meet even this more lenient standard.
The student's mother, the primary source for information about the bullying teacher's name, was not personally known to WPIX reporter Magee Hickey, nor recommended as a reliable source by others (cf. Gaeta v New York News, Inc., 62 NY2d 340 [1984]). However, the court appropriately accorded great significance to her close personal relationship to the victim, her daughter, in assessing whether Hickey was responsible in relying on her (see e.g. Weiner v Doubleday & Co., 142 AD2d 100, 105-107 [1st Dept 1988], affd 74 NY2d 586 [1989]; Grobe v Three Vil. Herald, 69 AD2d 175 [2d Dept 1979], affd 49 NY2d 932 [1980]). The court reasonably surmised that Hickey appropriately assumed the concerned mother would know the first and last names of the teacher who had allegedly acted in such an extreme way that the child had expressed a wish to leave the school, or even to die.
Community activist Tony Herbert's affidavit also supports the court's conclusion. Herbert pointed out that he heard the mother respond unequivocally and "immediately" with the name "Starlight" in response to Hickey's inquiry about the teacher's first name. This assertion lends further credence to Hickey's reliance on the mother's response. Moreover, Herbert attested that he, along with the mother and student, repeated the mother's response. Although Herbert claims that he had no personal knowledge of the teacher's first name, the record does not show that Hickey was, or had any reason to be, aware of Herbert's lack of such knowledge at the time. Moreover, Hickey had previously relied upon Herbert as a reliable source. Therefore, with Herbert's apparent endorsement of the mother's information, Hickey had no reason to doubt its veracity, and WPIX was thus properly granted summary judgment on this point (Robart v Post-Standard, 74 AD2d 963 [3d Dept 1980], affd 52 NY2d 843 [1981]; Campo Lind for Dogs v New York Post Corp., 65 AD2d 650 [3d Dept 1978]; see also Karaduman v Newsday, Inc., 51 NY2d 531, 549 [1980]).
Plaintiff faults Hickey for not doing more follow-up, but Hickey provided credible reasons to explain why she did not reach out to the teacher or to the PS 235 principal directly. She testified, based on her extensive experience, that she was essentially not allowed to reach out to the teacher, or that she would have been routed to DOE had she done so. She similarly cited her extensive experience reporting on school issues in testifying that seeking information from the school principal would have been fruitless. It would not, in other words, have been "normal procedure" under these circumstances to seek verification from the offending teacher or principal (see Hawks v Record Print & Publ. Co., 109 AD2d 972 [3d Dept 1985]). It was, in contrast, Hickey's normal procedure to reach out to DOE Press Office, as she did here, and she cannot be faulted for that office's refusal to respond to her questions. Plaintiff made no effort to rebut Hickey's reasons for not inquiring further.
The court properly found that WPIX could not be held liable for failure to retract the article during the nearly seven months that elapsed from her August 2014 retraction demand to its removal of the article from its website in March, 2015 upon her commencement of this case. Plaintiff provides "no authority to support [her] argument that the Chapadeau standard imposes a duty to correct previously-acquired information — and the law does not recognize such an obligation" (Thomas v City of New York, 2018 US Dist LEXIS 189305, at *29) [ED NY 2018]).
Plaintiff's position is inconsistent with the single publication rule since she, in effect, [*3]seeks to assert causes of action arising from both the initial publication and the continued publication of the article after she demanded a retraction (see Firth v State, 98 NY2d 365 [2002]; see also Roberts v McAfee, Inc., 660 F3d 1156 [9th Cir 2011].
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JANUARY 23, 2020
CLERK