Griffith v Daily Beast (2023 NY Slip Op 02614)

Griffith v Daily Beast

2023 NY Slip Op 02614

Decided on May 16, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: May 16, 2023

Before: Renwick, A.P.J., Webber, Oing, Singh, Kennedy, JJ. 

Index No. 100114/20 Appeal No. 259 Case No. 2022-03665 

[*1]Megan Griffith, Plaintiff-Respondent,
v
The Daily Beast, et al., Defendants-Appellants.

Davis Wright Tremaine LLP, New York (Katherine M. Bolger of counsel), for appellants.
Dhillon Law Group, New York (Ronald D. Coleman of counsel), for respondent.

Order, Supreme Court, New York County (Phillip Hom, J.), entered March 24, 2021, which denied defendants' motion to dismiss the amended complaint, unanimously reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment accordingly.
This action, in which plaintiff alleges that defendants made defamatory statements about her, concerns an article entitled "Gawker 2.0 Implodes as Its Only Reporters Quit," written by defendant Maxwell Tani and published online by defendant The Daily Beaston January 23, 2019. Plaintiff, who at the time of the article was employed by BDG Media as the editorial director of the digital media website Gawker, alleges that the article contained misleading excerpts of her communications with her colleagues at Gawker, omitting relevant context in order to inaccurately portray her as racist, homophobic, xenophobic, and transphobic. Plaintiff further alleges that the statements published in the article were false, misleading, or, to the extent they contained literal truth, taken out of context to place her in a defamatory light. Plaintiff maintains that in August 2019, BDG Media terminated her employment as a result of the article.
Plaintiff does not dispute that matters of legitimate public concern are implicated in the Gawker article. Accordingly, plaintiff's defamation cause of action withstands dismissal only if she adequately alleges that defendants, all of whom are members of the media, "'acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties'" in writing and publishing the article (Huggins v Moore, 94 NY2d 296, 302 [1999], quoting Chapadeau v Utica Observer-Dispatch, 38 NY2d 196, 199 [1975]; see Shuman v New York Mag., 211 AD3d 558, 558 [1st Dept 2022]). The "gross irresponsibility standard demands no more than that a publisher utilize methods of verification that are reasonably calculated to produce accurate copy" and does not require "exhaustive research [or] painstaking judgments" (id. at 559 [internal quotation marks omitted]). Furthermore, the alleged falsity or defamatory meaning of certain statements is not probative of whether defendants acted with gross irresponsibility (see e.g. Robart v Post-Standard, 52 NY2d 843, 845 [1981]; Shuman v New York Mag., 72 Misc 3d 1211[A], 2021 NY Slip Op 50699[U], *3 [Sup Ct, NY County 2021], affd 211 AD3d 558 [1st Dept 2022]).
Given these standards, and accepting the pleadings as true, as we must on a motion to dismiss, plaintiff fails to state a cause of action for defamation. She did not plead, as necessary for a defamation claim regarding matters of public concern, that defendants acted with gross irresponsibility in preparing the article and making the allegedly defamatory statements.
We reject plaintiff's argument that she adequately pleaded gross irresponsibility based on allegations that defendants relied on two sources[*2], one of whom was a close friend of Tani; that they did not contact her for comment; and that they contacted BDG Media only 40 minutes before publishing the article. In fact, in the article, Tani disclosed his relationship with the source who was his friend, allowing readers to draw their own conclusions as to what, if any, impact the relationship might have upon his reporting.
Moreover, plaintiff does not allege facts to show why defendants should have doubted the veracity of the two journalists who were the sources on the matters addressed in the article — namely, their reasons for having left Gawker. Although plaintiff alleges that both sources were "biased" and harbored "ill will" against her, she alleges no facts to show that any such bias or ill will stemmed from anything other than the matters addressed in the article which, in both sources' subjective view, fostered an intolerable work environment at Gawker. Plaintiff thus does not show that defendants were grossly irresponsible in relying on the two sources, given their "personal experiences" working with plaintiff, as well as the "corroborating evidence" — plaintiff's email communications and Slack messages with them or forwarded to them — that they furnished to Tani (Shuman, 2021 NY Slip Op 50699[U] at *3).
Although plaintiff faults defendants for not having reached out to her directly to get her comments on the article, New York courts have not required journalists to verify a source's statements with the subject of reporting (see Rainbow v WPIX, Inc., 179 AD3d 561, 562-563 [1st Dept 2020][finding the defendant entitled to summary judgment, despite failure to contact the plaintiff]; Weiner v Doubleday & Co., Inc., 142 AD2d 100, 107 [1st Dept 1988] [granting summary judgment for the defendant where the plaintiff asserted that the defendant should have contacted him before writing a book], affd 74 NY2d 586 [1989], cert denied 495 US 930 [1990]; Gorman v Random House, Inc., 237 AD2d 564, 565 [2d Dept 1997] [granting summary judgment for the defendant where inquiry was comprised of confirmation of plaintiff's name and employment], lv dismissed in part, denied in part 90 NY2d 921 [1997]; Visentin v Haldane Cent. School Dist., 4 Misc 3d 918, 922 [Sup Ct, NY County 2004] ["the media publisher is not charged with any requirement of fairness, balance or multiple source-checking"]).
We also reject plaintiff's efforts to show gross irresponsibility based on defendants' failure to retract or correct the article based on information allegedly furnished to them post-publication. The Chapadeau standard, namely the requirement that plaintiff allege facts to show that defendants acted with gross irresponsibility, does not impose a duty to correct previously acquired information (see Rainbow, 179 AD3d at 563).
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: May 16, 2023