Wachtler, J.
 

 This appeal concerns the granting of summary judgment in favor of the defendant in a defamation action. Appellant, Chapadeau, is a public school teacher who was arrested in Utica on June 10, 1971 and charged with criminal possession of a hypodermic instrument and criminal possession of a dangerous drug, heroin, in the fourth degree. The next day, respondent’s newspaper,
 
 The Utica Observer-Dispatch,
 
 reported Chapadeau’s arrest in an article which also related that two Herkimer men had been arrested on misdemeanor drug charges. After reporting the three arrests the newspaper account went on to state that, "The trio was part of a group at a party in Brookwood Park where they were arrested. Drugs and beer were found at the party, police charge.” Appellant claims that the quoted sentences which were false and maliciously published, libeled him. The newspaper admitted the falsity of those sentences but contended that in its entirety the article was a fair and true report and moved for summary judgment.
 

 The trial court denied the motion but was subsequently reversed. The Appellate Division held that in light of Chapadeau’s occupation and the nature of the crime his arrest was a
 
 *198
 
 matter of public interest and therefore qualifiedly privileged. Relying on
 
 Rosenbloom v Metromedia, Inc.
 
 (403 US 29) the Appellate Division concluded that the communication was privileged absent malice and the mere showing of defendant’s failure to discover and correct the error was insufficient to warrant a trial on the issue of malice.
 

 On appeal the appellant contends that the Appellate Division order must be overturned because the constitutional privilege with respect to matters of public interest which had been mandated by
 
 Rosenbloom (supra)
 
 was eliminated by the Supreme Court in
 
 Gertz v Robert Welch, Inc.
 
 (418 US 323). Thus, the principal issue is on what basis, subject to the limitations enunciated in
 
 Gertz, (supra)
 
 may a publisher of defamatory falsehoods about a private individual be held liable. We agree with the appellant that liability for publishing matters of public interest should be governed by some sort of fault standard, nevertheless, we conclude that in this case summary judgment was proper.
 

 Prior to the landmark decision in
 
 New York Times Co. v Sullivan
 
 (376 US 254) the constitutional protections embodied in the First Amendment did not extend to defamatory statements. However, in the
 
 New York Times
 
 case, the Supreme Court brought the law of libel within the ambit of constitutional protection by holding that a public official could not recover for a defamatory statement about his official conduct in the absence of proof of malice. Although this constitutional privilege was limited in applicability to public officials, it was soon greatly expanded to include lower echelon officials (e.g.,
 
 Henry v Collins,
 
 380 US 356 [police chief];
 
 Rosenblatt v Baer,
 
 383 US 75 [recreation supervisor];
 
 Beckley Newspaper v Hanks,
 
 389 US 81 [county clerk];
 
 St. Amant v Thompson,
 
 390 US 727 [Deputy Sheriff]); candidates for public office (e.g.,
 
 Monitor Patriot Co. v Roy,
 
 401 US 265;
 
 Ocala Star-Banner Co. v Damron,
 
 401 US 295) and plaintiffs classified as public figures
 
 (Curtis Pub. Co. v Butts,
 
 388 US 130). The apogee of this development was
 
 Rosenbloom v Metromedia, Inc.
 
 (403 US 29,
 
 supra).
 
 Despite the fact that it was a badly split plurality, the court held that libelous statements about a private individual involved in a matter of public concern were privileged and liability would result only where actual malice was established.
 

 Under the compulsion of
 
 Rosenbloom
 
 our court extended the constitutional privilege to publishers of libelous state
 
 *199
 
 ments concerning private individuals who were involved in matters of public interest
 
 (Trails West v Wolff,
 
 32 NY2d 207;
 
 Twenty-Five East 40th St. Rest. Corp. v Forbes, Inc.,
 
 30 NY2d 595;
 
 Kent v City of Buffalo,
 
 29 NY2d 818;
 
 Frink v McEldowney,
 
 29 NY2d 720). Subsequently, the Supreme Court, sensing that the balance between free speech and private reputation had tipped too far in the direction of free speech, retreated from
 
 Rosenbloom.
 
 In
 
 Gertz,
 
 a plurality opinion by Mr. Justice Powell, the court stated that
 
 Rosenbloom
 
 transgressed the legitimate State interest in providing a remedy for defamations injurious to the reputation of private individuals
 
 (Gertz,
 
 418 US 323, 343,
 
 supra).
 
 The court felt that private individuals are more vulnerable because they lack a forum to rebut the false statements and that they are more deserving of recovery because they have not thrust themselves into the vortex of public controversy. Consequently, the court concluded that the States should be accorded "substantial latitude” in fashioning a remedy based on fault.
 

 However, lest the pendulum swing back too far, the court set forth certain limitations. First, the court abolished the concept of strict liability which had existed at common law (Prosser, Torts [4th ed], § 113; Harper and James, Torts, ch 5
 
 et seq.)
 
 and directed that there be no liability without fault
 
 (Gertz, supra,
 
 at p 347). Secondly, the doctrine of presumed damages which governed at common law was eliminated and recovery restricted to compensation for actual injury. Lastly, the award of punitive damages was precluded, except on a showing of knowledge of falsity or reckless disregard for the truth (p 349). These limitations persuaded Mr. Justice Black-mun to abandon his joinder in the
 
 Rosenbloom
 
 majority and cast the deciding vote in
 
 Gertz.
 
 His primary motivation was that the limitations expressed would remove the specters of presumed and punitive damages thereby forestalling self-censorship.
 

 We now hold that within the limits imposed by the Supreme Court where the content of the article is arguably within the sphere of legitimate public concern, which is reasonably related to matters warranting public exposition, the party defamed may recover; however, to warrant such recovery he must establish, by a preponderance of the evidence, that the publisher acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties.
 

 
 *200
 
 . Turning to the instant case we look first to the nature of the offending communication. The article at issue here concerned the arrest of a public school teacher for unlawful possession of a hypodermic needle and felony possession of heroin. Thus stated it becomes abundantly clear that the challenged communication falls within the sphere of legitimate public concern. Chapadeau’s occupation, one highly influential with the youth of the community, coupled with the oft-cited menace of heroin addiction makes further expatiation unnecessary. The question then becomes whether the appellant submitted evidence sufficient to raise an issue of fact as to the newspaper’s culpability.
 

 Appellant asserts that respondent printed the article although it had no source indicating that Chapadeau was in Brookwood Park on that day or that he was arrested at a party there. Neither the Herkimer police captain who had been interviewed, nor the police record which had been examined, indicated that Chapadeau was associated with the other two persons arrested. Additionally, appellant contends that the failure of the State desk reporter and the copy reader to catch the error should preclude summary judgment. We disagree. These factors alone are insufficient to raise a question as to grossly irresponsible conduct. On the contrary they prove the opposite. The instant article was written only after two authoritative sources had been consulted and it was not published until it had been checked by at least two persons other than the writer. This is hardly indicative of gross irresponsibility. Rather it appears that the publisher exercised reasonable methods to insure accuracy.
 

 The mere fact that the word trio was mistakenly substituted for the word duo should not, of itself, result in liability. A limited number of typographical errors, as this appears to be, are inevitable.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Breitel and Judges Jasen, Gabrielli, Fuchs-berg and Cooke concur; Judge Jones taking no part.
 

 Order affirmed, with costs.