LAKE HAVASU ESTATES, INC. (a Colorado Corporation), Plaintiff,

v.

The READER'S DIGEST ASSOCIATION, INC. and Paul Friggens, Defendants.

No. 74 Civ. 1246.

United States District Court, S. D. New York.

Sept. 30, 1977.

**490**

Bernard Novick, Jerry J. Mondora, New York City, for plaintiff.

Eugene F. Bannigan, Stephen J. Crimmins, Lord, Day & Lord, New York City, for defendant Reader's Digest Assoc., Inc.

## MEMORANDUM OPINION AND ORDER

MOTLEY, District Judge.

This is a libel action in which jurisdiction in this Court is based upon diversity of citizenship, 28 U.S.C. 1332. Plaintiff, "Lake Havasu Estates, Inc. (a Colorado corporation)", complains that it has been libeled by an article in the May 1973 issue of *Reader's Digest* entitled "Land Swindles, A Con Game to Beware Of". Plaintiff named as defendants The Reader's Digest Association, Inc. (Reader's Digest), a Delaware corporation, and Paul Friggens, the author of the article. Paul Friggens was never served with process.

The article describes the fraudulent land sales practices of several companies, among them one in Arizona. Reader's Digest has moved for summary judgment.

This litigation revolves around the fact that there are three land sales companies in Arizona with substantially similar names. The three companies are Lake Havasu City (hereinafter City), Lake Havasu Estates (hereinafter Estates) and Lake Havasu Estates, Inc., a Colorado corporation (plaintiff). Defendant's article discussed only Estates, but plaintiff alleges that it was defamed because the article would be interpreted by readers to refer to it, a corporation with a similar name.

The history of the three companies is of some importance in deciding this motion. City is an established development of some ten thousand people situated on a lake, unique in the surrounding Arizona desert. The land development had sold many lots to individual purchasers by 1968. That same year, a nearby land owner, Irving Pearlstein, decided to change the name of the land owned by him to Lake Havasu Estates. He then sold 12,800 acres of this nearby land to a corporation. That corporation then took the name Lake Havasu Estates (Estates). This new company then sold plots to individual purchasers who bought with a view to eventually building residences on this land. Plaintiff then bought 900 acres of land from Pearlstein and took the name Lake Havasu Estates, Inc.[1]

As contained in a portion of defendant's deposition of Jerry J. Mondora, plaintiff's attorney, which is appended as Exhibit B to defendant's Notice of Motion for Summary Judgment, plaintiff admits that it took the name "Lake Havasu Estates, Inc." under an agreement with Estates, Exhibit B, p. 15.

1. Plaintiff throughout its papers refers to itself as "Lake Havasu Estates, Inc., a Colorado corporation". Its stationery, as seen in a photocopy of a letter to Reader's Digest dated May 22, 1973, Exhibit B of Jerry J. Mondora's affidavit, submitted in opposition to defendant's Motion for Summary Judgment, also bears the name "Lake Havasu Estates, Inc., a Colorado corporation". However, plaintiff's Corporate Certificate from the state of Colorado for 1973 and plaintiff's license to do business in Arizona dated 1969, annexed as Exhibits A and B to Jerry J. Mondora's affidavit, state plaintiff's name as simply "Lake Havasu Estates, Inc."

Plaintiff also admits in the same deposition that it took the name "Lake Havasu Estates, Inc." knowing of the existence of the Lake Havasu City development some forty miles away, Exhibit B, at p. 14. Plaintiff was thus selling desert land as "Lake Havasu Estates, Inc." while it knew that another company was selling land from an adjacent plot under the name Lake Havasu Estates and while it knew that a third company was selling land forty miles away under the name Lake Havasu City. It was against this background that defendant's article appeared.

Defendant's article focused on the fraudulent practices of Estates, plaintiff's neighbor and the second company of the three to come into existence. Defendant's article was in part based on public testimony given by a William F. Fraccaro at a hearing held by the Office of Interstate Land Sales Registration, a division of HEW, in Chicago on October 11, 1972. Fraccaro testified that he had been swindled by an Estates salesperson who convinced him to buy land from Estates by representing to him that he was buying land from City, the well-known development. Fraccaro then found out that he had been deceived but by the time of the hearing had been unable to obtain any refund from Estates.

It is not disputed that defendant's article was an accurate description of certain sales practices of Estates. It is also clear that defendant did not mention the name "Lake Havasu Estates, Inc., a Colorado corporation" in its article. Plaintiff bases its claim on the allegation that, given the similarity between the name used by itself and the name used by Estates, readers of the article would be unable to distinguish between the two companies and thus attribute the fraudulent practices of Estates to plaintiff. Plaintiff alleges that the article created confusion in the minds of prospective buyers of land and that its business was damaged.

Plaintiff claims that defendant knew of plaintiff and maliciously and negligently failed to distinguish between the two companies in its article. Alternatively, plaintiff alleges that defendant should have known of plaintiff and that defendant was negligent in not investigating further before publishing the article.

It is not disputed that the article was written by Paul Friggens and checked for accuracy by Kathryn V. Powell, a researcher for Reader's Digest. Defendant submitted an affidavit by Ms. Powell as support for its Motion for Summary Judgment. In her affidavit, Ms. Powell stated that she had read the transcript of the hearing of the Office of Interstate Land Sales Registration at which Mr. Fraccaro testified, interviewed Mr. Fraccaro, examined the records of the Office of Interstate Land Sales, and interviewed two officials of that office, John R. McDowell, Deputy Director, and Raymond Eluhow, Investigator. Ms. Powell stated that she had never heard of plaintiff until after the article was published. (Affidavit of Kathryn V. Powell.)

Plaintiff, in its Memorandum of Law submitted in Opposition to Defendant's Motion for Summary Judgment, says (at p. 3):

> The evidence suggests that defendant's employees knew of the distinction between the two companies before the article was published . . . the affidavit of Miss Powell . . . is of little probative value, but that the statements of Mr. Bernstein[2] and Mr. McDowell, by affidavit or at trial, would be the best evidence of what transpired with respect to the defendant's research which was conducted at their Office of Interstate Land Sales in Washington, D. C.

Plaintiff also submitted an affidavit by Jerry J. Mondora, attorney for plaintiff, in Opposition to Defendant's Motion for Summary Judgment. In that affidavit, Mr. Mondora said (at p. 4):

> It is very curious, and really beyond belief, that the defendant's employees did not know of the distinction between [Estates and plaintiff] . . . It is also very curious that Mr. McDowell or Mr. Bernstein did not make Miss Powell aware of the distinction between the two companies . . . .

---

2. Administrator of the Office of Interstate Land Sales Registration.

■ Plaintiff has supported none of its allegations with affidavits or other evidence. Under Rule 56(e) of the Federal Rules of Civil Procedure,[3] the question of whether defendant knew of plaintiff before the publication of the article cannot be considered a genuinely disputed fact since plaintiff has not by affidavit or deposition of any party genuinely put this issue in dispute.

As the court said in *Meeropol v. Nizer*, 381 F.Supp. 29 (S.D.N.Y.1974), *aff'd*, 560 F.2d 1061 (2d Cir. 1977),

Summary judgment is particularly appropriate at an early stage in cases where claims of libel or invasion of privacy are made against publications dealing with matters of public interest and concern. In recognition of the constitutional privilege of free expression secured by the First and Fourteenth Amendments, the courts in libel actions have recognized the need for affording summary relief to defendants in order to avoid the 'chilling effect' on freedom of speech and press. *Dombrowski v. Pfister*, 380 U.S. 479, 487, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); *Konigsberg v. Time, Inc.*, 312 F.Supp. 848 (S.D.N.Y.1970) . . . .

The court must consider whether defendant was culpable in not investigating further than it did before publishing the article about Estates, and in this connection, the question is the extent of First Amendment protection which defendant can properly claim.

■ Defendant first claims that plaintiff is a public figure for the limited purpose of discussion of land fraud. However, the court finds that plaintiff is not a public figure. Plaintiff did not invite comment nor thrust itself into the forefront of the land fraud controversy. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *Time v. Firestone*, 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976). Plaintiff did not seek out interviews, *James v. Gannett Co. Inc.*, 40 N.Y.2d 415, 386 N.Y.S.2d 871, 353 N.E.2d 834 (1976), nor was it a publicly held company about to offer stock and thus a public figure for the limited purpose of discussion of its stock offering, *Reliance Insurance Co. v. Barron's*, 428 F.Supp. 200, (S.D.N.Y.1977). The actual malice standard of *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), is therefore inapplicable.

■ Defendant next claims that its article should be accorded the protection given publications which deal with matters of legitimate public concern, *Gertz, supra*. This plaintiff concedes. The article clearly dealt with a matter of public concern. The public hearings conducted by HEW on the subject of land sales fraud are further evidence of this.

In *Gertz, supra*, the Supreme Court said that, within certain guidelines, the states could decide for themselves the appropriate standard of liability for a publisher of defamatory statements which involved a matter of public concern as long as they did not impose the common law rule of liability without fault.

■ A federal court sitting in a diversity case must apply the conflict of law principles of the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Neither party discussed the application of New York conflict of law principles to this case. Both parties assumed that New York defamation law would apply. However the court need not decide that issue in order to decide this motion. New York law requires that a plaintiff in a defamation action prove that the publisher acted with gross irresponsibility if the defamatory statements are about a matter of legitimate public concern. *Chapadeau v. Utica Observer-Dispatch, Inc.*, 38 N.Y.2d 196, 379 N.Y.S.2d 61, 341 N.E.2d 569 (1975). Colorado, the place of plaintiff's incorporation, requires that a plaintiff prove actual malice

**3.** Rule 56(e) states in relevant part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

on the part of the defendant. *Walker v. Colorado Springs Sun, Inc.,* 188 Colo. 86, 538 P.2d 450, *cert. denied,* 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975). Arizona, where plaintiff's business is located, requires that a plaintiff prove only simple negligence, *Peagler v. Phoenix Newspapers, Inc.,* 114 Ariz. 309, 560 P.2d 1216 (1977).

Defendant is not liable under even the most lenient of these standards, the mere negligence standard of Arizona. Defendant mentioned only the name of Estates. It checked the story for accuracy as to Estates as can be seen from the discussion of Ms. Powell's affidavit above. Plaintiff concedes that the story was accurate as to Estates. Defendant did not know of plaintiff and it did not mention plaintiff's name.

■ Defendant was under no duty when publishing an article to check to see whether other companies existed which bore the same name as the subject of its article as claimed by plaintiff. Plaintiff makes its claim without citation of authority. Defendant was not negligent in publishing a story without conducting a search for companies with the same name as Estates. *Landau v. Columbia Broadcasting System, Inc.,* 205 Misc. 357, 128 N.Y.S.2d 254 (1954), *aff'd,* 1 A.D.2d 660, 147 N.Y.S.2d 687 (1955); *Clare v. Farrell,* 70 F.Supp. 276 (D.Minn. 1947).

As recounted above, plaintiff chose to use the name of a company which was selling land adjoining the land plaintiff intended to sell. It is not clear why plaintiff wished to share in a name already being used by two other land development companies in Arizona. However, defendant cannot be expected to go farther in distinguishing plaintiff from a similarly named company than plaintiff itself had done. *Finnegan v. De-*

*troit Free Press Co.,* 78 Mich. 659, 44 N.W. 585 (1889) (Plaintiff could not recover in defamation action when he had taken middle initial to distinguish himself from others bearing the name used in defamatory statement).

Plaintiff cannot argue that any confusion between the two companies was due to the defendant's article rather than to its own choice in imitating the name of another company.

Defendant was in no way negligent and under *Gertz, supra,* it cannot be held liable for defaming plaintiff.[4] Summary judgment for defendant is accordingly granted.

Submit order on notice.

---

4. In addition to being legally foreclosed on the issue of liability, it should be noted that plaintiff's ability to prove damages, under the circumstances of this case, is seriously in doubt. The record reflects that plaintiff's land sales practices have been called into question by various government agencies. Plaintiff's application for a license to sell land in Colorado was denied by the Colorado Real Estate Commission in 1972 on the grounds that plaintiff had made duplicate sales of the same lots to different purchasers, Exhibit J, Defendant's Motion for Summary Judgment. This denial of license was affirmed by the District Court of the State of Colorado in 1973, Exhibit K. Plaintiff entered into a consent decree with the Securities and Exchange Commission by which it agreed not to solicit in Colorado purchasers for the sale of land, Exhibit M. Plaintiff was enjoined in Iowa from further solicitation as a result of a suit brought by the Iowa Attorney General, Deposition of David Koritan, June 5, 1974, pp. 47–49.