OPINION OF THE COURT
Shirley Fingerhood, J.
Defendants’ motion for summary judgment raises a question concerning the constitutionally mandated standard of liability for libel not previously decided in this State.
The defamatory statement of which plaintiff complains was published in the Daily News in July, 1977 as the first paragraph of the fourth article in a series on the deinstitutionalization of mental patients. That paragraph read: “When he was 41, George Nies, a Queens construction worker, suffered a nervous breakdown that psychiatrists said was precipitated by a messy divorce and the fact that *484 his son killed himself because his mother dated other men.” Plaintiff is the divorced ex-wife of Mr. Nies and the mother of his three sons, one of whom died in 1975. She is not and has never been either a public official or a public figure. She sues for compensatory and punitive damages.
Because plaintiff is a private person, defendants are not entitled to invoke the constitutional privilege which was enunciated in New York Times Co. v Sullivan (376 US 254), for libel actions by public officials and extended to apply to such actions by public figures in Curtis Pub. Co. v Butts (388 US 130). The Supreme Court of the United States so held in Gertz v Robert Welch, Inc. (418 US 323, 325), concluding that “the proper accommodation between the law of defamation and the freedoms of speech and press protected by the First Amendment” justifies a distinction between private and public persons. The latter not only “invite attention and comment” (418 US, at p 345) but they “usually enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individuals normally enjoy” (418 US, at p 344). “Thus, private individuals are not only more vulnerable to injury than public officials and public figures; they are also more deserving of recovery” (418 US, at p 345).
Mr. Justice Powell’s opinion for the court in Gertz also rejected the test of “general or public interest” in the publication for determining the applicability of the New York Times standards to private individuals, finding that test “inadequately serves both of the competing values at stake” (418 US, at p 346). That test, proposed by the plurality opinion in Rosenbloom v Metromedia, Inc. (403 US 29), “would occasion the additional difficulty of forcing state and federal judges to decide on an ad hoc basis which publications address issues of ‘general or public interest’ and which do not” (418 US, at p 346).
Gertz held first, that “so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual” (418 US, at p 347); and second, that the States may permit recovery for compensation only for *485 actual injury and may give presumed or punitive damages only where liability is based on knowledge of falsity or reckless disregard for the truth (418 US, at pp 348-349).
In response to Gertz, the New York Court of Appeals has defined the appropriate standard of liability “where the content of the article is arguably within the sphere of legitimate public concern, which is reasonably related to matters warranting public exposition” Chapadeau v Utica Observer-Dispatch (38 NY2d 196,199). In cases concerning such content, private persons may recover by establishing “by a preponderance of the evidence, that the publisher acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties” (38 NY2d, at p 199).
Chapadeau (supra) has been held inapplicable to the present case by Mr. Justice Korn who granted a prior motion by plaintiff to dismiss the affirmative defense of qualified privilege for matters of public concern. Mr. Justice Korn’s ruling that the paragraph in issue was not an essential part of the news story is the law of this case.
The courts of this State have apparently not as yet described the fault requirement to be imposed pursuant to Gertz (supra) in actions not governed by Chapadeau (supra). Defendants believe that the only remaining recognized standard of liability is simple negligence and argue that they are entitled to summary judgment because plaintiff has failed to show that defendants were negligent in writing and publishing the Daily News article.
The court agrees that negligence principles are applicable. Therefore, a determination must be made whether plaintiff has established that defendants failed to exercise ordinary care in reporting and publishing false statements which defamed her, considering the foreseeable danger of injury from the publication and the reasonableness of defendants’ conduct in proportion to that danger.
The standard of care required of news reporters may be determined without the benefit of expert opinion. (Greenberg v CBS Inc., 69 AD2d 693, 710.)
The foreseeable danger of injury from the publication is obvious; its content should have alerted defendants to the *486 possibility of suffering and the danger of injury to reputation of the ex-wife described as responsible for the suicide of her son.
Accordingly, the testimony obtained in discovery, upon which both parties rely, will be reviewed to ascertain whether defendants exercised due care under the circumstances.
The deposition of defendant Marcia Kramer, the reporter who wrote the articles, contains most of the significant facts. Kramer testified that her sole source for the information about George Nies’ background was his sister, his legal guardian, Dorothy Sorrentino. Kramer obtained Sorrentino’s name at the office of the Nursing Home Special Prosecutor’s office, and believed Sorrentino to be reliable because someone at that office or a file indicated that their investigation corroborated Sorrentino’s testimony about conditions at the nursing home. Kramer’s notes of her conversation with Sorrentino consisted of a few words jotted on a complaint report: “nervous breakdown — after divorce. Son — drugs — kills self over mother dating other men”. Kramer did not ask how or when the son died and did not know whether his death occurred prior to Nies’ “breakdown”. She asked Sorrentino no questions concerning the divorce, the whereabouts of other relatives or whether there were other children. Kramer had no opinion concerning Sorrentino’s feelings about her ex-sister-in-law.
Although the reporter knew that Nies had been a patient at the Veterans Hospital, she sought corroboration of Sorrentino’s story only from the doctors at Creedmoor State Hospital, who refused to speak with her; she did contact people at Creedmoor but notes and records of those conversations had disappeared. Although she visited the nursing home at which Nies was a patient, she did not speak to him.
The research for the series took two months. The article in issue was completed about a week before it was published. Kramer’s editor did not have any conversation with her concerning the steps she had taken to confirm that the facts she reported were accurate.
*487 The true facts, according to the deposition of plaintiff, were that Nies had a long history of alcoholism prior to his admission to the VA hospital at Fort Hamilton in approximately 1967 or 1968, two years after the parties were legally separated. Thereafter he was hospitalized at North-port and Creedmoor. One of his three sons died after an overdose of methadone in 1975 several years after plaintiff remarried in 1970.
If Kramer had inquired about the dates of the hospitalizations, the divorce, and the son’s death she would, no doubt, have been alerted to the inaccuracy of Sorrentino’s information. If Kramer had asked for the names and addresses of Nies’ mother, ex-wife, and sons, she could have sought from them the corroboration necessary in view of the unavailability of the psychiatrists to whom the information was attributed (and who, themselves, were undoubtedly quoting history reported by others).
Mr. Justice Titone’s description of the obligation of publishers in Greenberg v CBS Inc. (supra, at p 710) is appropriate here: “News articles and broadcasts must contain the answers to the essential inquiries of who, what, where, when, why and how. The obvious conclusion from the defendants’ lack of knowledge * * * is that many of the elementary questions were not asked. Not asking those questions insured the defendants against the possibility of doubt.” Kramer did not ask those questions in this case. For that reason plaintiff has met her burden and shown the negligence required to permit her claim for compensatory damages to stand.
To sustain her claim for punitive damages, plaintiff has a greater burden. Punitive damages may be recovered upon a showing that defendants had knowledge of falsity or recklessly disregarded the truth. (Gertz v Robert Welch, Inc., supra, at p 349.) Greenberg (supra) held that showing that defendants failed to make the essential inquiries was sufficient to meet the requirements of Chapadeau (supra). In the Greenberg opinion, the standards for investigative reporting were deemed to be more rigorous than those for basic reporting (69 AD2d, at p 710). The instant case also involves investigative reporting. A higher degree of care is justified by the longer period of time the investigative *488 reporter, has to check inconsistencies, seek out corroboration and verify information than is given to a news reporter. In addition, the publisher of an article based on an investigation has the opportunity not available for a news story to examine the research upon which the article is based and ask pertinent questions. In the context of this case, a violation of “the standards of information gathering and dissemination ordinarily followed by responsible parties” (Chapadeau v Utica Observer-Dispatch, supra, at p 199) shows a reckless disregard for the truth. Accordingly, plaintiff’s claim for punitive damages may stand.
Neither defendant James nor defendant O’Neill, publisher and editor, respectively, of the Daily News, played any role in preparing or editing the series of articles written by defendant Kramer. Their relationship to their employer, defendant New York News, Inc., is insufficient to impose liability upon them. To hold otherwise “would be to resurrect the kind of liability without fault that was expressly rejected in Gertz v Robert Welch, Inc” (Karaduman v Newsday, Inc., 51 NY2d 531, 542.)
Defendants’ motion for summary judgment is granted in favor of defendants James and O’Neill, and is otherwise denied.