STEPHEN L. MITCHELL, Respondent-Appellant, v HERALD COMPANY, as Publisher of the Syracuse Herald Journal, Appellant-Respondent.

Fourth Department, May 27, 1988

### APPEARANCES OF COUNSEL

*Bond, Schoeneck & King (S. Paul Battaglia* of counsel), for appellant-respondent.

*Scott D. Rodman* for respondent-appellant.

### OPINION OF THE COURT

DENMAN, J. P.

In this libel action defendant, the Herald Company, was granted summary judgment dismissing the complaint. It asks that we modify the order to impose sanctions, including costs and attorney's fees, on plaintiff and his attorney for instituting and pursuing a frivolous claim (CPLR 8303-a). We find that the libel claim stated herein is lacking in merit and, because plaintiff and his attorney knew or should have known that it lacked merit, defendant is entitled to sanctions.

Plaintiff commenced this action for libel against defendant, publisher of the Syracuse Herald Journal, alleging injury to his reputation as a result of an article published on August 27, 1985. Plaintiff complains of eight statements contained in the article and, in addition, complains of a headline, "Woman Raped," pertaining to an unrelated article appearing under the article about plaintiff. The article about plaintiff described an argument between plaintiff and several neighbors followed by an altercation between plaintiff and two police officers who

responded. The article recounted that, upon the arrival of police, plaintiff approached one of his neighbors in a threatening manner; that a female police officer stepped between them; that plaintiff stepped on the officer's foot and challenged her; that the officers arrested plaintiff; that plaintiff punched the female officer, breaking her nose, and pushed the other officer, injuring his wrist; and that plaintiff then ran off before being subdued and charged with two counts of assault, disorderly conduct, and resisting arrest.[1] The article was written by defendant's reporter, Jeffrey Stage, after reviewing various police reports. Read together, the police reports, sworn accounts of the incident and follow-up investigation by at least three police officers, support the factual statements contained in the newspaper article.

The gravamen of plaintiff's claim, as amplified by his answers to interrogatories, is that the story is false and that defendant was grossly irresponsible in reporting the incident. With respect to the issue of truth, plaintiff contends that he is innocent of the charges and that the statements contained in the police reports and newspaper article are false. With respect to the allegation of gross irresponsibility, plaintiff contends that the reporter was at fault in relying solely on the reports of the police officers and in failing to interview other eyewitnesses to the incident who "would have told the reporter(s) that the police version of the incident was not true".

In its answer, defendant denied the allegations of the complaint and raised the affirmative defenses of truth and constitutional privilege (*Chapadeau v Utica Observer-Dispatch*, 38 NY2d 196). Following service of the answer, defendant's attorney wrote to the plaintiff's attorney and asked him to discontinue the frivolous suit or risk the imposition of sanctions. Plaintiff's counsel did not respond to the letter.

Defendant moved for summary judgment and for sanctions against plaintiff and his attorney for prosecuting a frivolous action. The motion was supported by the affidavits of defendant's counsel and the author of the newspaper article. As the basis for summary judgment, defendant argued that, in light of his criminal conviction, plaintiff was collaterally estopped

---

1. The criminal charges against plaintiff resulted in his conviction for second degree assault, resisting arrest, and disorderly conduct. The conviction preceded the commencement of this libel action by about two weeks. Plaintiff has appealed his conviction to this court but the appeal has not yet been perfected.

from showing that the article was false. Additionally, defendant argued that it was entitled to summary judgment because it did not act with gross irresponsibility in publishing the story. The reporter averred that the story was based entirely upon his review of several sworn police reports; that, in his experience, such reports are generally highly reliable; and that he had "no basis whatsoever to doubt the accuracy" of the reports. The basis for defendant's motion for sanctions was similar. Defendant contended that plaintiff and his attorney should have known that the claim was meritless in view of the dispositive effect of the criminal conviction on the issue of truth; plaintiff's inability to demonstrate that defendant was grossly irresponsible in relying on sworn police reports; and plaintiff's inability, as a convicted felon, to show injury to reputation.

Plaintiff opposed the motion by affidavit of his attorney, who basically reiterated plaintiff's claim of innocence and merely argued that defendant had not demonstrated its entitlement to summary judgment. In opposition to the motion for sanctions and to refute defendant's claim that plaintiff and his attorney were or should have been aware of the lack of merit of the claim, plaintiff's attorney averred that "plaintiff had no access to any factual allegations by defendants [sic] of the source of their information for said article." Elsewhere in his affidavit, however, plaintiff's counsel averred that he "was the trial attorney for Stephen Mitchell and is personally familiar with all the facts and circumstances of the criminal prosecution and conviction * * * has personally investigated the circumstances of the underlying incident and believes that * * * this action was brought in good faith and is not frivolous." Without indicating the basis for its decision, the court granted defendant's motion for summary judgment dismissing the complaint, but denied its motion for sanctions.

■ The court properly granted summary judgment to defendant. Since the news article concerned a matter within the sphere of legitimate public concern, defendant was required to demonstrate that its reporter was not grossly irresponsible in writing the article (*Chapadeau v Utica Observer-Dispatch, supra,* at 199-200). Defendant demonstrated its entitlement to judgment as a matter of law on that issue and, in addition, on the issue of truth (*see, Zuckerman v City of New York,* 49 NY2d 557, 562; *Chapadeau v Utica Observer-Dispatch, supra*). The reporter relied on the sworn reports of 3 or 4 officers who

were either involved in the incident or investigated it. A newspaper reporter is entitled to rely on official reports by law enforcement officers, including unsworn reports *(see, Carlucci v Poughkeepsie Newspapers,* 88 AD2d 608, *affd* 57 NY2d 883; *Robart v Post-Standard,* 74 AD2d 963, *affd* 52 NY2d 843; *Grobe v Three Vil. Herald,* 69 AD2d 175, *affd* 49 NY2d 932), unless the reporter is aware of the probable falsity of the reports or has some reason to doubt their accuracy *(Robart v Post-Standard, supra).* Here, the reporter averred that he knew such reports to be generally reliable and that there were no indications that the reports might be false. In view of defendant's subsequent conviction on the charges arising out of the incident, it is beyond dispute that the police reports were accurate. Because a plaintiff in a libel action is required to prove the falsity of the publication where it involves a matter of public concern *(see, Philadelphia Newspapers v Hepps,* 475 US 767), the fact that the article is true bars plaintiff's claim. Thus, defendant has shown its entitlement to judgment as a matter of law on plaintiff's libel claim.

In opposition to the motion, plaintiff failed to raise a triable question of fact on the issues of truth or gross irresponsibility *(see, Chapadeau v Utica Observer-Dispatch, supra).* Plaintiff submitted only an attorney's affidavit, which was not competent to establish the falsity of the news article *(Zuckerman v City of New York, supra,* at 563). In addition, plaintiff's counsel failed to show that the reporter was grossly irresponsible in relying on the police reports. The thrust of plaintiff's argument was that the reporter did not conduct an independent investigation into the incident and hence, did not interview witnesses who supposedly would have given a version favorable to plaintiff. However, the newspaper is under no legal obligation to interview every possible witness to an incident or to write the most balanced article possible. The newspaper's obligation is to base its story on a reliable source. It is clear that defendant's reporter did so and thus defendant was properly granted summary judgment *(Chapadeau v Utica Observer-Dispatch, supra; Carlucci v Poughkeepsie Newspapers, supra,* at 609; *Robart v Post-Standard, supra; Grobe v Three Vil. Herald, supra).*

■ Because plaintiff and his attorney knew or should have known that the libel claim lacked merit, we conclude that defendant is entitled to sanctions. In reaching that conclusion,

two issues must be addressed. The first is whether plaintiff's claim is frivolous. CPLR 8303-a[2] states, in pertinent part:

"§ 8303-a. Costs upon frivolous claims and counterclaims in actions to recover damages for personal injury, injury to property or wrongful death

"(a) If in an action to recover damages for personal injury, injury to property or wrongful death, an action or claim is commenced or continued by a plaintiff or a counterclaim, defense or cross claim is commenced or continued by a defendant that is found, at any time during the proceedings or upon judgment, to be frivolous by the court, the court shall award to the successful party costs and reasonable attorney's fees not exceeding ten thousand dollars * * *

"(c) In order to find the action, claim, counterclaim, defense or cross claim to be frivolous under subdivision (a) of this section, the court must find one or more of the following * * *

"(ii) the action, claim, counterclaim, defense or cross claim was commenced or continued in bad faith without any reasonable basis in law or fact and could not be supported by a good faith argument for an extension, modification or reversal of existing law. If the action, claim, counterclaim, defense or cross claim was promptly discontinued when the party or the attorney learned or should have learned that the action, claim, counterclaim, defense or cross claim lacked such a reasonable basis, the court may find that the party or the attorney did not act in bad faith."

Applying the statutory definition of frivolousness, we conclude that the suit was commenced and continued "in bad faith without any reasonable basis in law or fact" (CPLR 8303-a [c] [ii]; *England v Gradowitz Bros. Realty Corp.*, 137 Misc 2d 21,

---

2. There are actually two nearly identical CPLR sections numbered 8303-a. The first authorizes the award of sanctions for frivolous claims or defenses in actions for personal injury, injury to property, or wrongful death. Plaintiff does not contest the applicability of that section to this action based on defendant's contention that an action for personal injury includes a claim for defamation *(see,* General Construction Law § 37-a). The second section 8303-a authorizes the award of sanctions for frivolous claims and defenses in actions for medical, dental, and podiatric malpractice. The statutes appear to be redundant, at least as to actions commenced on or after June 28, 1986, since the Court of Appeals has assumed that a suit for malpractice is encompassed within a suit for personal injury *(see, Matter of A. G. Ship Maintenance Corp. v Lezak,* 69 NY2d 1, 6). The duplication is the apparent result of the Legislature's attempt to amend a statute which had previously been amended out of existence *(compare,* L 1986, ch 220, § 35 [eff June 28, 1986], *with* L 1986, ch 485, § 11 [eff July 21, 1986]).

22; *see, Zaldivar v City of Los Angeles,* 780 F2d 823, 828; *Golden Eagle Distrib. Corp. v Burroughs Corp.,* 801 F2d 1531, 1538 [holding that determination whether there was a violation of the analogous rule 11 of the Federal Rules of Civil Procedure is to be reviewed by the appellate court de novo or, if a factual dispute exists, under the "clearly erroneous" standard]).

Plaintiff could recover in this libel action only if he proved that the newspaper account was false and that defendant was grossly irresponsible in printing it. From the outset of this action, it was or should have been apparent to plaintiff and his counsel that neither issue could be resolved in his favor. It is probable that plaintiff is collaterally estopped from contesting the truth of the news article as a result of his conviction for assault, since the events related in the article were directly at issue in the criminal proceeding. Even if, as plaintiff argues, the recently concluded criminal action does not constitute collateral estoppel, the evidence adduced therein was sufficient to prove beyond a reasonable doubt that the police reports and the article were true. Although he denied being aware of the source of the newspaper article, plaintiff's counsel was defense counsel in the criminal action and thus was certainly acquainted with the contents of the police reports relied upon by the reporter.

The bad faith of plaintiff and his counsel is further illustrated by the inclusion in the complaint of the allegation that plaintiff was libeled by the headline, "Woman Raped," relating to an entirely separate story. No reader could reasonably conclude that the headline concerned plaintiff and no reasonable attorney could conclude other than that such allegation was frivolous. The bad faith of plaintiff and his counsel was compounded by their failure to discontinue the action after being specifically advised by defendant's attorney that the claim was baseless. The statute imposes a duty on the party and his attorney to act in good faith to investigate the claim and promptly discontinue it where inquiry would reveal that the claim lacks a reasonable basis *(cf., Golden Eagle Distrib. Corp. v Burroughs Corp., supra).*

A second issue is whether the statute mandates an award of costs upon a finding of frivolousness or whether the court has discretion to deny an application. Use of the word "shall" in the statute appears to mandate an award of costs, including reasonable attorney's fees, up to $10,000. Although no New York court has addressed the issue, the trend among Federal

appellate courts which have interpreted the similar language of rule 11 of the Federal Rules of Civil Procedure is that sanctions are mandated on a finding that rule 11 has been violated *(see, Brown v Federation of State Med. Bds.,* 830 F2d 1429, 1434 [7th Cir]; *Weil v Markowitz,* 829 F2d 166, 171 [DC Cir]; *Robinson v National Cash Register Co.,* 808 F2d 1119, 1130-1131 [5th Cir]; *Golden Eagle Distrib. Corp. v Burroughs Corp., supra,* at 1538 [9th Cir]; *Albright v Upjohn Co.,* 788 F2d 1217, 1221-1222 [6th Cir]; *Eastway Constr. Corp. v City of New York,* 762 F2d 243, 254 [2d Cir], *cert denied* — US —, 108 S Ct 269). In accordance with the weight of Federal authority, we hold that sanctions are mandated after a finding of frivolousness. Interpreting the statute in that manner will accomplish the legislative intent of preventing waste of judicial resources and reducing malpractice and other liability insurance costs by discouraging frivolous claims and defenses *(see,* L 1985, ch 294, § 1; L 1986, ch 220, § 1).

Based on the foregoing, and in accordance with the statute, the matter must be remitted to the trial court to determine the amount of costs which are properly recoverable and the amount of reasonable attorney's fees (CPLR 8303-a [a], [b]). Moreover, the trial court shall determine, based on the circumstances, whether the sanction should be imposed against the plaintiff, his attorney, or both (CPLR 8303-a [b]).

Accordingly, the order insofar as appealed by plaintiff, should be affirmed and insofar as appealed by defendant should be modified to award sanctions pursuant to CPLR 8303-a in an amount to be determined by the court on remittitur.

PINE, BALIO and DAVIS, JJ., concur with DENMAN, J. P.; GREEN, J., taking no part.

Order modified, on the law, and, as modified, affirmed, without costs, and matter remitted to Supreme Court, Onondaga County, for further proceedings in accordance with opinion by DENMAN, J. P.