[731 NYS2d 58]

Stella A. McCormack et al., Respondents, v County of West-chester et al., Appellants.

Second Department, October 1, 2001

## APPEARANCES OF COUNSEL

*Banks Shapiro & Gettinger, L. L. P.,* Mount Kisco (*Mona D. Shapiro* of counsel), for County of Westchester and another appellants.

*Adam Liptak,* New York City and *Corbin Silverman & Sanseverino, L. L. P.* (*John J. Gallagher* of counsel), for New York Times and others, appellants. (One brief filed.)

*James William Hubert,* White Plains, for respondents.

**OPINION OF THE COURT**

COZIER, J.

This is an action to recover damages for defamation, breach of the duty of confidentiality, breach of contract, and violations of Civil Rights Law §§ 50 and 51, in connection with the publication of a photograph and accompanying article that appeared in the Westchester Weekly Section of the Sunday New York Times.

The plaintiff Stella A. McCormack was admitted into the Westchester County Medical Center (hereinafter WCMC) on May 13, 1996, for preeclampsia, a condition marked by high blood pressure and protein in the urine. On May 23, 1996, McCormack gave birth to Sabrina McCormack (hereinafter the infant), who was born two months premature. The infant was placed in the neonatal intensive care unit, where she was diagnosed with pulmonary deductis, an opening of the heart.

A nurse at WCMC asked McCormack for her consent to permit WCMC to take a photograph of the infant in connection with an article that would appear in the New York Times (hereinafter the Times) concerning WCMC. McCormack gave her consent on May 23, 1996, by executing a release form which gave WCMC permission to take and use the infant's photograph "for any purpose of medical education, knowledge or research which WCMC may deem proper (including media publicity), but not for advertising or other commercial trade purposes." Under the terms of the release, neither McCormack, the infant, nor any members of their family were to be identified by name in connection with the public use of such material.

On May 23, 1996, the defendant Chris Maynard, a photographer for the Times, went to WCMC and photographed two infants in the neonatal unit being attended to by a doctor and nurse. Thereafter, Maynard prepared a "Caption Information" sheet, which described the photographs he took as follows:

> "Dr. Harry S. Dweck, Director, Regional Neonatal ICU, and Kathy Suman, RN, staff of same, work with newborn babies in isolettes in the neonatal ICU at Westchester Medical Center in Valhalla.

> "Very small baby in cap is Sabrina McCormack of New Rochelle; plumper baby, bareheaded is Stephen James Drgan (yes, it's spelled that way) of Highland Hills, NY."

On June 2, 1996, the Times published an article entitled "Health Issues That Concern the County the Most," which appeared on the first page of the Westchester Weekly Section. The article, which was written by the defendant Elsa Brenner, discussed various health problems, including raccoon rabies, Lyme disease, tuberculosis, environmental health concerns, and AIDS.

With respect to AIDS, the Westchester County Health Commissioner, Dr. Mark S. Rapoport, was reported to have said:

> "[t]he greatest threat to residents continued to be AIDS * * * Most worrisome is that women and children are increasingly at risk * * *
>
> "We're seeing a shift in transmissions to females, who are getting it from male intravenous drug users * * * And females are transmitting it to their newborns.
>
> "Even though Federal studies have shown that doctors can sharply cut the incidence of HIV infection in babies if an antiviral drug is administered to an infant before, during and after birth * * * [w]ho looks after the newborn once the mother is dead? That's the real tragedy."

The article also addressed efforts to reduce the transmission of AIDS among intravenous drug users and high school students and further read, in part, with respect to the disease, that:

> "[a]bout 51 percent of the cases have occurred in intravenous drug users. Another 28.5 percent were among heterosexual and bisexual men. Heterosexual contact accounted for 9 percent of the cases, and the rest resulted from contaminated blood products, transmittal from parents and undetermined causes, the Health Department said."

In addition, the article addressed hospital operations and the types of services offered. One sentence of the article read "[i]n addition to being the region's only tertiary care center offering neonatal, pediatric, and trauma services * * * the County Medical Center in Valhalla 'serves as a safety net for Westchester's public health needs and in many cases is the port of last call' for the indigent."

A photograph of the infant accompanied the article and appeared to the left of a portion of Dr. Rapoport's statement. In

the photograph, the infant was shown lying in what appeared to be an incubator, with a heart monitor attached to her chest and what appeared to be a breathing tube lying to her right side. The photograph also showed four gloved hands in close proximity to the infant. The caption, which appeared below the photograph, identified the infant as "Sabrina McCormack of New Rochelle."

In response to a complaint made by the infant's parents, the Times published a correction the following week which read:

> "A picture caption last Sunday about health care referred incompletely to a newborn baby at the County Medical Center. The baby, Sabrina McCormack of New Rochelle, was born prematurely, but was healthy. She was receiving intensive care in the hospital's neonatal unit."

The infant's parents, who are the plaintiffs herein, contend that the Times, Elsa Brenner, and Chris Maynard (hereinafter collectively referred to as the Times defendants) committed defamation, in that the picture and accompanying text, when taken together, implied that the infant and her parents were afflicted with AIDS, and further that the Times defendants failed to refer to the medical conditions of the infant or the mother. The plaintiffs also contend that all of the defendants herein violated Civil Rights Law §§ 50 and 51 by "utilizing" the infant's "name and photographic image" and her parents' "last name and city of residence" "for commercial and trade purposes * * * without * * * advanced written consent," and by knowingly or recklessly making false statements that the plaintiffs "were infected with obnoxious diseases, were drug users and/or addicts, and were transmitters of dangerous and life threatening illnesses."

Further, the plaintiffs contend that the County of Westchester and WCMC (hereinafter collectively referred to as the Westchester County defendants) breached the contract and a duty of confidentiality by the unauthorized release of the infant's name and city of residence for an unauthorized purpose in contravention of the terms set forth in the release. This Court, in a prior appeal of the denial of a motion to dismiss by the Times defendants, dismissed all of the claims asserted on behalf of the infant herein as a result of her death in March 1997 (see, McCormack v County of Westchester, 255 AD2d 296).

The regional picture editor for the Westchester Weekly Section of the Times, Christopher E. Jones, testified at his deposi-

tion that he selected the infant's photograph to illustrate the article in light of the "journalistic connection" between the photo and the story. The Times's section editor, deputy editor, and copy editor all reviewed and edited the article before publication.

█ Under Civil Rights Law § 50, any person, firm or corporation that uses for trade or advertising purposes, the name, portrait, or picture of any living person without written consent, is guilty of a misdemeanor. Civil Rights Law § 51 provides that:

> "Any person whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided [in section 50] may maintain an equitable action * * * to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use."

The Court of Appeals has consistently held that a defendant is liable under Civil Rights Law §§ 50 and 51 for the publication of a photograph which illustrates an article on a matter of public interest only where the photograph bears no real relationship to the article or the article is an advertisement in disguise (*see, Messenger v Gruner + Jahr Print. & Publ.,* 94 NY2d 436; *Finger v Omni Publs. Intl.,* 77 NY2d 138; *Arrington v New York Times Co.,* 55 NY2d 433, *cert denied* 459 US 1146; *Murray v New York Mag. Co.,* 27 NY2d 406).

Even where use of the photograph may create a false impression, there is no liability under sections 50 and 51 of the Civil Rights Law if the photograph bears a real relationship to the article (*see, Messenger v Gruner + Jahr Print. & Publ., supra* [photo of 14-year-old female model used to illustrate "Love Crisis" column in magazine for teenage girls which contained letter from a 14-year-old girl who became intoxicated at a party and had sex with three males—no liability]; *Finger v Omni Publs. Intl., supra* [photograph of two parents and their six children used to illustrate article discussing caffeine-aided fertilization research project although children not conceived by artificial means and family did not participate in research project—no liability]; *Arrington v New York Times Co., supra* [photograph of plaintiff, a black professional, used to illustrate article discussing the black middle class although plaintiff did not share views expressed in the article, and article did not attribute any ideas or opinions to the plaintiff—no liability];

*Murray v New York Mag. Co., supra* [photograph of plaintiff, who is "not of Irish extraction," attending the St. Patrick's Day Parade in Manhattan, used to illustrate article concerning the "contemporary attitudes of Irish Americans in New York City"—no liability]).

In the instant case, the subject article was a matter of public interest, as it addressed various health issues that most concerned Westchester County residents, and the varied services and operations of the hospital, including the neonatal section, where the infant was located. The subject photograph is illustrative of the type of services that the defendant WCMC provides, i.e., neonatal care. Even assuming that the article, together with the photograph, implied that the infant and her parents suffered from AIDS, the photograph bears a real relationship to the article. As such, those causes of action which are predicated on Civil Rights Law §§ 50 and 51 must be dismissed as to all of the defendants herein.

In order to recover damages for defamation "where the content of the article is arguably within the sphere of legitimate public concern, which is reasonably related to matters warranting public exposition," a defamed party must demonstrate by a preponderance of the evidence "that the publisher acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties" (*Chapadeau v Utica Observer-Dispatch,* 38 NY2d 196, 199; *see also, Chaiken v VV Publ. Corp.,* 907 F Supp 689, 696 [SD NY], *affd* 119 F3d 1018 [2d Cir.], *cert denied* 522 US 1149; *Karaduman v Newsday, Inc.,* 51 NY2d 531, 539).

The factors in determining whether a defendant acted "without due consideration for the standards of information gathering and dissemination" (*Chapadeau v Utica Observer-Dispatch, supra,* at 199) include "whether sound journalistic practices were followed in preparing the defamatory article * * * whether normal procedures were followed and whether an editor reviewed the copy * * * whether there was any reason to doubt the accuracy of the source relied upon so as to produce a duty to make further inquiry to verify the information * * * and whether the truth was easily accessible" (*Dalbec v Gentleman's Companion,* 828 F2d 921, 924-925 [2d Cir 1987]; *Chaiken v VV Publ. Corp., supra,* at 696).

The record establishes that the Times did not act in a grossly irresponsible manner by publishing the article and accompanying photograph. Before publication, the Times's section editor,

deputy editor, and copy editor all reviewed and edited the article. Moreover, the regional picture editor selected the infant's photograph based upon his professional judgment as to the "journalistic connection" between the photo and the article. "[E]ditorial judgments as to news content will not be second-guessed so long as they are sustainable" (*Gaeta v New York News*, 62 NY2d 340, 349).

Although the plaintiffs contend that the Times defendants intentionally used the infant's photograph to illustrate an AIDS-infected child born to AIDS-infected intravenous drug parents, the defamation cause of action must be dismissed insofar as asserted against these defendants, in that the plaintiffs have failed to establish by a preponderance of the evidence that the Times defendants intended or endorsed such an implication and acted in a grossly irresponsible manner (*see, Chapadeau v Utica Observer-Dispatch, supra; Chaiken v VV Publ. Corp., supra*). Neither the article nor the caption indicated that the infant or her parents suffered from AIDS, or discussed any of their medical conditions. The subject article addressed a variety of health concerns, as well as the services that the defendant WCMC offered.

In addition, the plaintiff Thomas A. McCormack's claim for breach of the duty of confidentiality must·be dismissed, as he was not a patient, and hence no confidential relationship existed (*see,* CPLR 4504). Further, the plaintiff Stella A. McCormack's claim for breach of the duty of confidentiality is also dismissed since neither her name nor the details of her diagnosis or treatment were ever disclosed.

The plaintiffs allege that they suffered mental anguish as a result of the Westchester County defendants' breach of the contract. However, as there is no breach of the duty of confidentiality herein, the breach of contract claim is not sustainable, in that "absent a duty upon which liability can be based, there is no right of recovery for mental distress resulting from the breach of a contract-related duty" (*Wehringer v Standard Sec. Life Ins. Co.*, 57 NY2d 757, 759).

Inasmuch as all of the claims have been dismissed against all of the defendants, the plaintiffs' claim for punitive damages must also be dismissed, as academic. Therefore, the order is reversed insofar as appealed from, on the law, that branch of the motion of the County and WCMC which was for summary judgment dismissing the complaint insofar as asserted against them, and the motion of the New York Times, Brenner, and Maynard for summary judgment, are granted, and the complaint is dismissed.

BRACKEN, P. J., O'BRIEN and SMITH, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law, with one bill of costs payable to the appellants appearing separately and filing separate briefs, that branch of the motion of the County and WCMC which was for summary judgment dismissing the complaint insofar as asserted against them, and the motion of the New York Times, Brenner, and Maynard for summary judgment, are granted, and the complaint is dismissed.