OPINION OF THE COURT
Fred L. Shapiro, J.
Ordered that this motion is granted and the complaint against the newspaper defendants is dismissed in its entirety.
The court notes preliminarily that plaintiff is not permitted to submit a sur-reply affirmation of his attorney and it was not considered in the determination of this motion. Nevertheless, a review of that document demonstrates that it would not change the analysis or result here. Additionally, in the absence of a cross motion, the court denies plaintiffs request to permit him to amend the pleadings to add causes of action sounding in intentional infliction of emotional distress and prima facie tort against the newspaper defendants. Pursuant to CPLR 2215, the court is only permitted to grant relief to a nonmoving party when, upon searching the record on a summary judgment motion pursuant to CPLR 3212, the court finds that summary judgment is warranted for the nonmovant, or, pursuant to CPLR 3211 (b), where the plaintiff moves to dismiss a defense, and, upon searching the record, the court finds that the complaint should be dismissed (see CPLR 3212 [b]; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3211:40, at 55).
This defamation action was brought by plaintiff John Visentin, a high school English teacher, against his former employer, Haldane Central School District and its superintendent, John DiNatale (hereafter, the school defendants), as well as the local newspaper, the Putnam County News and Recorder, its publisher Brian O’Donnell and PCN&R, Inc., and reporter Margaret O’Sullivan after an article concerning plaintiffs dismissal from that employment appeared in a front page article on May 9, 2001. The article was entitled “John Visentin, English Teacher at Haldane High School, Dismissed.” A subheading stated: “Incident with Student May 1st last straw.” The article begins by stating the plaintiff “was dismissed on Tuesday, May 1, 2001 after an inappropriate incident with a student.” The article attributes the story to superintendent DiNatale. The 12-line article provides, in part, that according to defendant DiNatale, plaintiff had “other issues with students during the school *920 year,” that “in reprimanding a child there is no reason for a teacher to put a hand on a student” and that plaintiff “had actually resigned as of the end of this school year,” but that the May 1st incident “prompted Dr. DiNatale to act swiftly” and ask plaintiff to “leave the premises.” The article also states that defendant DiNatale worked with plaintiff, but plaintiff “was not able to deal with student management issues in a professional manner” and that defendant DiNatale and school principal Stella concluded that plaintiff “was not the right match for the school.” Plaintiff also named as defendants then student Melanie Ferris, who was involved in the May 1st incident with plaintiff and her stepmother, Doreen Ferris. According to plaintiff, the defamatory statements that appeared in the article were derived solely from statements made by defendant DiNatale, during a telephone interview with reporter Margaret O’Sullivan.
The newspaper defendants now move for summary judgment dismissing the complaint against them, arguing that plaintiff has failed to raise a triable issue of fact as to those defendants with respect to the issues of falsity and fault. On this motion for summary judgment, the court will consider, as it must, the proof in the light most favorable to plaintiff (Museums at Stony Brook v Village of Patchogue Fire Dept., 146 AD2d 572 [2d Dept 1989]). Assuming for the purposes of argument the complete falsity of the factual content of the article, plaintiff has failed to demonstrate that a triable issue exists on the newspaper defendants’ fault.
As a threshold matter, the court is asked to resolve whether plaintiff, whose claims arise from an article about his actions and status as a public school teacher, is a “public figure,” as that term has been defined for purposes of a libel action, or a private figure. As a public figure, plaintiff would have the heightened burden of proving, by “clear and convincing evidence,” that the newspaper defendants published the article in question with “constitutional malice,” that is, that they acted either with actual knowledge of the falsity of their publication or with a high degree of subjective awareness of its probable falsity (see New York Times Co. v Sullivan, 376 US 254, 279-280 [1964]).
Although the Appellate Division, Second Department, has not passed upon this question, the Fourth Department has held that a public school teacher is not a public figure for purposes of the analysis (Dec v Auburn Enlarged School Dist., 249 AD2d *921 907 [4th Dept 1998]). Constrained as this court is by that precedent (see Mountain View Coach Lines v Storms, 102 AD2d 663, 664 [2d Dept 1984]), this court holds that plaintiff will be treated as a private figure.
As a private figure, the plaintiffs initial burden in opposing a motion for summary judgment is to establish that a triable issue exists as to the “substantial falsity” of the article published by the newspaper defendants (Masson v New Yorker Mag., Inc., 501 US 496, 517 [1991]). In performing this analysis, courts must ordinarily distinguish between statements of fact, which are actionable, and statements of opinion, which are not (Immuno AG. v Moor-Jankowski, 77 NY2d 235, 256 [1991]). In his sworn deposition testimony, superintendent DiNatale states that the newspaper article accurately reported in substance the factual information and personal opinions that he provided to reporter Margaret O’Sullivan.
In assessing the liability of the newspaper defendants, the court need not perform the fact/opinion analysis since, even assuming the substantial falsity of any reported fact in the subject article, plaintiff cannot meet his remaining constitutionally mandated burden of establishing that the newspaper defendants published any such presumably false and defamatory statement of fact with the high degree of fault required under the standard enunciated in Chapadeau v Utica Observer-Dispatch (38 NY2d 196 [1975]). Under that standard, a libel plaintiff “must establish, by a preponderance of the evidence, that the publisher acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties” (38 NY2d at 199).*
Plaintiff claims that the article in question was published with gross irresponsibility since neither defendant Margaret O’Sullivan, who conducted the telephone interview with defen *922 dant DiNatale and wrote the article in question, nor her editor, Brian O’Donnell, checked the veracity of DiNatale’s account by contacting other potential witnesses, including students who may have witnessed the incident with Melanie Ferris. Plaintiff also takes issue with the newspaper defendants’ failure to obtain and present his version of the events. No such action by the newspaper defendants was warranted under the applicable standard and circumstances.
To be sure, under Chapadeau’s “gross irresponsibility” standard, the media publisher is not charged with any requirement of fairness, balance or multiple source-checking. To the contrary, so long as the publisher relied on at least one authoritative source and had no good reason to doubt the veracity of that source or the accuracy of the information he or she provided, even if that information ultimately proved to be incorrect or false, the publisher has appropriately discharged its duty (Chapadeau, 38 NY2d at 200; Robare v Plattsburg Publ. Co., 257 AD2d 892 [3d Dept 1999] [reliance on court clerk]; Grobe v Three Vil. Herald, 69 AD2d 175 [2d Dept 1979], affd 49 NY2d 932 [1980] [reliance upon police officer]).
Here, there can be no serious dispute that superintendent DiNatale, who has confirmed that he was the only source of the information reported by defendant O’Sullivan, was a reputable source for a story concerning the events leading to the dismissal of a school teacher employed in his district. As superintendent, he is ultimately responsible for all personnel matters and can be considered an authoritative spokesperson on incidents and events occurring within the district. In this case, he was involved in plaintiffs dismissal and thus had personal knowledge of many of the pertinent details surrounding the events that were recounted for the reporter. Thus, defendants O’Sullivan and O’Donnell were certainly justified in considering superintendent DiNatale’s statements on the reasons for Visentin’s departure from the district as reliable.
Plaintiff has failed to adduce any proof to raise a triable issue that the reporter had a reason to doubt the superintendent or his account. There is no proof here that defendant DiNatale had previously given incorrect information to the newspaper, that he was known by the newspaper defendants to harbor ill will toward plaintiff or that his account contained some glaring error, ambiguity or inherent contradiction that should have caused the newspaper defendants to continue gathering information (cf. O’Brien v Troy Publ. Co., 121 AD2d 794 [3d Dept 1986]; *923 Hogan v Herald Co., 84 AD2d 470 [1982], affd 58 NY2d 630 [1982]). To the contrary, the record demonstrates that superintendent DiNatale was well known to the newspaper defendants and in the community as a reliable source of information regarding school district matters. The newspaper defendants’ prior experience with this source, as well as the source’s expertise and authority in speaking on school district matters, distinguishes this case from those cited by plaintiff where courts found triable issues as to whether publishers had reason to doubt the accuracy of information obtained from private patients who disparaged their physicians (see e.g. O’Brien v Troy Publ. Co., 121 AD2d 794 [1986]; Greenberg v CBS, Inc., 69 AD2d 693 [1979]). Here, there is no basis to conclude that the newspaper defendants acted in a grossly irresponsible manner in reporting the story of plaintiffs dismissal by relying on the account given by the superintendent of the school district where plaintiff was employed.
Plaintiff attempts to equate the actions of reporter O’Sullivan in publishing this article with “investigative reporting” and “high risk journalism” (see, Greenberg v CBS, 69 AD2d 693, 711 [1st Dept 1979]), ostensibly in support of his contention that the newspaper defendants should have checked multiple sources in gathering the information for this story. The attempt is futile. The article here involved basic news coverage of a newsworthy event — the termination of a public school teacher in the community where the newspaper is circulated — shortly after it unfolded. The newspaper defendants were not making news; they were simply reporting it, based on the account of an authoritative source with personal knowledge and involvement in the event being reported. Chapadeau makes plain that the newspaper defendants had no affirmative duty to interview all possible witnesses to the incidents chronicled, to write a more balanced article or even to provide plaintiff’s account of this newsworthy event.
Given the foregoing, the court finds that plaintiff has failed to demonstrate the existence of a triable issue of fact with respect to the newspaper defendants’ fault in publishing the article in question. Nor is there any proof in this record raising a material issue of fact as to whether the newspaper defendants published the article with ill will or spite that would justify punitive damages (Prozeralik v Capital Cities *924 Communications, 82 NY2d 466, 478-479 [1993]). Thus, the newspaper defendants’ motion for summary judgment is granted in its entirety and the complaint is hereby dismissed as against these defendants.

 In Chapadeau, the Court of Appeals held that an article that reported, albeit incorrectly, the arrest of a public school teacher fell within the ambit of legitimate public concern and that its content was directly related to “matters warranting public exposition” (38 NY2d at 199, 200). Thus, there can be no serious dispute that the article at the core of this case, which concerns the events leading to plaintiffs dismissal from employment as a public school teacher, is similarly situated. Plaintiff downplays the newsworthiness of this article by attempting to identify the content of the article as merely relating to “a teacher asking the student to move from the teacher’s chair and the teacher touching the student on the shoulder when the student refused to move.” Clearly, the article more broadly concerns the teacher’s dismissal from his position, a matter of legitimate public concern.